[Civ. No. 35219. Second Dist., Div. Four. Apr. 13, 1970.]

KATHERINE LUCILE JEFFARES, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
CITY OF CULVER CITY et al., Respondents.

## COUNSEL

Raymond Gloozman for Petitioner.

Rupret A. Pedrin, Nathan Mudge, Sheldon M. Ziff, T. Groezinger, Loton Wells, A. C. Jones and Philip M. Miyamoto for Respondents.

## OPINION

**ALARCON, J.\***—The petitioner seeks annulment of a decision after reconsideration of the Workmen's Compensation Appeals Board which reduced her award of temporary disability benefits.

### FACTUAL BACKGROUND

The petitioner, Katherine Lucile Jeffares, sustained injuries on April 19, 1967, while employed as a part-time park recreation instructor for the city of Culver City. Prior to her injury, in addition to her job with Culver City, she was a student at U.C.L.A., carrying a full academic load. She had worked on a part-time basis since January 9, 1967. She worked 10 to 12 hours per week at $2.39 per hour for a total weekly earnings of approximately $25 per week. Her 1966 earnings totaled $5,407.32. Her 1968 earnings from teaching were $4,889.88.

Relying on the petitioner's testimony and her wage statements for the years 1965, 1966 and 1969, the board found petitioner's earning capacity to be minimum and awarded her temporary disability indemnity of $20 per week. The appeals board explained its decision as follows: "In reviewing applicant's wage statement while working as a recreation leader, we note that applicant was paid at the rate of $2.39 per hour for variable hours per week. The wage report covers the period January 9, 1967 through April 23, 1967 and shows the total wages earned as $356.11. The period of employment is approximately 14-2/7 weeks which, when divided into $356.11, averages $25.00 per week. Accordingly, we are of the opinion that applicant's wages during this period entitle her to the minimum rate only for temporary disability indemnity for the period April 20, 1967 to December 12, 1967, and December 21, 1967 to and including January 3, 1968 since she was a student during this period."

The petitioner testified that she was undergoing student teacher training at the time of the accident. She expected to obtain her teaching credential at the end of U.C.L.A.'s 1967 summer session. She had planned to work for

---

*Assigned by the Chairman of the Judicial Council.

the recreation department until the summer session started at which time she would quit her job to devote her full time to finishing the academic work necessary for her credential so that she could commence teaching in September. Because of her injuries she was unable to complete the spring semester, nor enroll in the 1967 summer session, nor obtain a teaching position until February 1968.

## PETITIONER'S CONTENTION

The petitioner contends that the board was using her actual earnings at the date of injury as the sole basis for determining the temporary disability award.

## DISCUSSION

Section 4453 of the Labor Code sets forth the manner in which average *earnings* must be computed in awarding temporary disability indemnity. The portions of section 4453 applicable to these facts provide as follows: "In computing average annual earnings for the purposes of temporary disability indemnity only, the average weekly earnings shall be taken at not less than thirty-eight dollars and forty-six cents ($38.46) . . . (d) Where the employment is for less than 30 hours per week . . . the average weekly earnings shall be taken at 95 percent of the sum which reasonably represents the average weekly earning capacity of the injured employee at the time of his injury, due consideration being given to his actual earnings from all sources and employments." The method of computing temporary disability *payments* is set forth in seciton 4653 of the Labor Code as follows: "If the injury causes temporary total disability, the disability payment is 65 per cent of the average weekly earnings during the period of such disability, consideration being given to the ability of the injured employee to compete in an open labor market."[1]

In stating the reasons for its decision the board has made it clear that it relied solely on the actual earnings of the petitioner at the time of the injury. Although the board indicated that it relied upon the petitioner's testimony, it failed to take into consideration the evidence contained therein concerning her intention to begin teaching in September of 1967.

In a decision rendered subsequent to the action of the board in the instant matter, the Supreme Court in *Goytia* v. *Workmen's Comp. App.*

---

[1]Since the actual weekly earnings were $25 per week, the award of temporary disability payment should have been not less than $25 per week (65% of 38.46 = $25). The appeals board concedes in its answer filed in opposition to the issuance of a writ of review that the minimum temporary disability payment should be $25 per week.

*Bd.,* 1 Cal.3d 889 [83 Cal.Rptr. 591, 464 P.2d 47], interpreted the meaning of section 4453, subdivision (d) as it applied to the method of computing average weekly earnings of part-time employees. The court held in *Goytia, supra,* at page 895, that in computing earning capacity as that term is used in section 4453, subdivision (d), the board shall take into consideration post-injury earnings. The court stated: "Pre-injury earnings constitute one factor, but not the exclusive factor, in determining such earnings. The subdivision in alluding to earning 'capacity' must necessarily refer to earning potential which may not, and probably will not, be reflected by prior part-time earnings." The *Goytia* case involved an award for permanent disability. The court did not consider the effect of section 4453, subdivision (d) on an award for a temporary disability. However, in *Argonaut Ins. Co. v. Industrial Acc. Com.,* 57 Cal.2d 589 [21 Cal.Rptr. 545, 371 P.2d 281], the Supreme Court construed the term "earning capacity" as used in section 4453, subdivision (d) as having the same meaning in computing a temporary or permanent disability compensation. ■ "An estimate of earning capacity is a prediction of what an employee's earnings would have been had he not been injured. Earning capacity, for the purposes of a temporary award, however, may differ from earning capacity for the purposes of a permanent award. In the former case the prediction of earnings need only be made for the duration of the temporary disability. In the latter the prediction is more complex because the compensation is for loss of earning power over a long span of time. Thus an applicant's earning capacity could be maximum for a temporary award and minimum for a permanent award or the reverse." (Pp. 594-595.)

■ An intent by an injured part-time employee to work full time in the future is a factor which must be considered in determining earning capacity. The Supreme Court in *Goytia* cited with approval *Esparza* v. *Regents of the University of Calif.,* 31 Cal. Comp. Cases 433, wherein the appeals board awarded maximum permanent disability payments to a student research assistant who was working part-time when the injury occurred and who but for the accident would have received maximum earnings upon graduation. ■ The fact that the injured employee is a student working part-time because of the necessity to complete his educational goal in order to obtain a full-time position in the future is a special circumstance which should be considered in predicting earning potential. (See dissent *Goytia* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 889, 901.) ■ In the instant matter, because of the petitioner's educational program to better herself financially and professionally, she would have begun her teaching career in September 1967 but for the injuries she sustained which delayed her plans until February 1968. The petitioner's career plans at the time of the injury demonstrated her willingness and ability to work at a full-time job which would justify more than minimum benefits. The petitioner's earning "poten-

tial" during the term of her temporary disability included the salary paid to a teacher as of September 1967.

The full-time employment of the petitioner as a teacher after the termination of her temporary disability was a relevant factor which should have been considered by the appeals board as demonstrating the probability that the petitioner would have been willing and would have had the opportunity to obtain full-time employment as a teacher at a salary calling for a maximum rate of compensation after September 1967. There appears to be nothing in the record which would contradict the applicant's testimony as to her plans for the year 1967. So far as appears, the respondents did not present any evidence to cast doubt upon her ability to carry out these plans. Evidence that she would not have been able to obtain her degree and credential at the close of the summer term, or proof of some other disability or a lack of willingness or a lack of any openings for new teachers in the fall of 1967 might have raised doubts in this respect. Respondents point to no impeaching evidence or evidence tending to cast doubt upon the honesty and integrity of the petitioner. There was no evidence to support the board's conclusion that it was reasonably probable that her earnings would be less than the statutory minimum rate. If the board had any doubts it should have directed the taking of additional evidence. (See *Lundberg* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 436, 440 [71 Cal.Rptr. 684, 445 P.2d 300].)

The cause is remanded to the board for further proceedings consistent with the views expressed.

Kingsley, Acting P. J., and Dunn, J., concurred.