[S.F. No. 22854. In Bank. Feb. 22, 1972.]

RUTH GOYTIA, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD and
CALIFORNIA PACKING CORPORATION, Respondents.

■■■■■■■■■■■■■■■

**COUNSEL**

Morgan, Beauzay & Hammer and Robert T. Bledsoe for Petitioner.

Rupert A. Pedrin, Jon L. Gateley and Kevin R. Twohy for Respondents.

**OPINION**

**TOBRINER, J.**—This workmen's compensation claim is before our court for a second time. (*Goytia* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 889 [83 Cal.Rptr. 591, 464 P.2d 47].) On the initial appeal, we held that in determining an employee's "earning capacity" for purposes of computing his "average weekly earnings" under Labor Code section 4453, subdivision (d),[1] the Workmen's Compensation Appeals Board is required to give "due

---

[1]Labor Code section 4453, subdivision (d), provides for the computation of "average weekly earnings" as follows: "Where the employment is for less than 30

consideration" to an applicant's *post-injury earnings* insofar as such earnings shed light on the applicant's earning capacity at the time of his injury. Since the record before us on that initial appeal did not reveal either that the board had given such "due consideration" to petitioner Goytia's post-injury earnings, or that there was any reason to conclude that such post-injury earnings were not relevant to the applicant's "earning capacity," we remanded the matter to the WCAB for further action consistent with our decision.

■ On remand, the board properly noted that under section 4453, subdivision (d) the relevant "earning capacity" is the "earning capacity of the injured employee *at the time of his injury,*" (italics added) and thus that an applicant's post-injury earnings are only significant in this context insofar as they illuminate the employee's earning capacity at this earlier date. Having made this valid observation, however, the board inexplicably refused to undertake any factual inquiry into the present applicant's circumstances or intentions "at the time of the injury" to determine if her post-injury earnings were in fact relevant to her "earning capacity" at that time; instead, the WCAB simply held, in effect as a matter of law, that it would only consider an applicant's post-injury earnings in cases in which there was "specific evidence of some actual steps taken by the employee . . . to improve himself prior to the injury." Because the board found no such "specific evidence" present in the instant case, it refused to consider the applicant's post-injury earnings and merely reinstated its initial award without modification.

The employee sought a writ of review from the board's determination, contending that this latest administrative decision conflicted with our earlier opinion in this matter. We granted a hearing and, for the reasons discussed below, have concluded that the employee's objections must be sustained.

The facts giving rise to this litigation are fully set out in our initial opinion (1 Cal.3d at pp. 891-892); we briefly summarize only the most pertinent. Petitioner, Ruth Goytia, sustained a wrist injury on April 15, 1966, while employed by the California Packing Corporation; prior to her injury, she had worked for many years as a seasonal packer on a part-time basis, with sufficient earnings to entitle her only to a minimum compensation rate

---

hours per week, or where for any reason the foregoing methods of arriving at the average weekly earnings cannot reasonably and fairly be applied, the average weekly earnings shall be taken at 95 percent of the sum which reasonably represents the average weekly earning capacity of the injured employee at the time of his injury, due consideration being given to his actual earnings from all sources and employments."

Hereafter all section references are to the Labor Code unless otherwise indicated.

of $20 per week. Subsequent to her injury, however, in July 1967, after her children had grown older and no longer needed her constant care, Mrs. Goytia obtained full-time, permanent employment as a cashier; her earnings on the full-time job would have sufficed to produce a compensation rate of $50.57 per week. In its initial decision in this matter, the board rejected the referee's award of compensation at the full-time rate, and instead set Mrs. Goytia's permanent disability award only with reference to the minimum rate, noting in its decision that "[a]t the time of her injury applicant's earnings were admittedly minimum."

In annulling this initial WCAB decision on the applicant's prior appeal, we held that the "earning capacity" concept of section 4453, subdivision (d) could not properly be equated with an employee's "earnings" at the time of the injury, and that in determining an employee's "earning capacity" under the section, the board was required to give "due consideration" to an employee's post-injury earnings. In so holding, we recognized that since the "earning capacity" concept, as created by the statutory provision, was to be utilized to estimate the monetary effects of a disability on *future* earnings,[2] "earning capacity" could not be "locked into . . . the actual earnings of the worker at the date of injury, [but instead] the term contemplates [the employee's] general over-all capability and productivity; . . ." (1 Cal.3d at p. 894.) We remanded Mrs. Goytia's claim to the board with directions to give "due consideration" to the applicant's post-injury earnings.

On remand the board, although purporting to give Mrs. Goytia's post-injury earnings the "due consideration" required by our decision, in reality ignored such earnings completely, and instead indicated that it would only consider post-injury earnings in a limited class of cases, cases in which, in the board's language, there was "specific evidence of some actual steps taken by the employee himself to improve himself prior to the injury. . . ."[3]

---

[2]"The subdivision, in alluding to earning 'capacity' must necessarily refer to earning *potential* which may not, and probably will not, be reflected by prior part-time earnings." (Italics added.) (*Goytia* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 889, 895 [83 Cal.Rptr. 591, 464 P.2d 47]; see *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1962) 57 Cal.2d 589, 594-595 [21 Cal.Rptr. 545, 371 P.2d 281]. ("An estimate of earning capacity is a prediction of what an employee's earnings *would have been* had he not been injured. . . . [A]ll facts relevant and helpful to make the estimate must be considered. . . . The applicant's ability to work, his age and health, *his willingness and opportunities to work,* his skill and education, the general condition of the labor market, and employment opportunities for persons similarly situated are all revelant.") (Italics added.))

[3]Although the board purported to qualify this limitation by indicating that it might not require evidence of "actual steps" of self-improvement if there were "other convincing evidence not dependent upon the fact of the injury," the board's action in the instant case illustrates a total disregard for any such qualifying condition. As the board itself recognized, the explanation for Mrs. Goytia's acceptance of full-

Although our original opinion contained no such limitation, and, on the contrary, indicated that "due consideration" should be given to post-injury earnings in all cases, the WCAB apparently fashioned its own limitation of this broad principle by narrowly focusing on the specific facts of several earlier decisions which had properly taken post-injury earnings into account in determining an employee's earning capacity. Thus, because the applicants in both *Jeffares* v. *Workmen's Comp. App. Bd.* (1970) 6 Cal.App.3d 548 [86 Cal.Rptr. 288] and *Esparza* v. *Regents of the University of California* (1966) 31 Cal.Comp.Cases 433[4] were in fact attending school to augment their "earning capacity" at the time of their injuries, and thus had "taken . . . actual steps to improve" themselves prior to the injury, the board transformed this element into a *legal prerequisite* for the consideration of post-injury earnings.

Neither of the above precedents, however, contains the slightest indication that such "specific evidence" of affirmative, "self-improving" action on the part of the applicant is *required* before post-injury earnings should be considered.[5] Indeed, in our prior *Goytia* opinion we discussed with approval the decision of *Dole Corporation* v. *Industrial Acc. Com.* (*Pargaz*) (1966) 31 Cal.Comp.Cases 41, in which post-injury earnings were properly considered even though absolutely no evidence indicated that any steps were taken by the applicant to "improve himself" prior to the injury. (1 Cal.3d at pp. 896-897.)

In light of the general rationale of our initial *Goytia* opinion, and our explicit approval in that opinion of the WCAB's earlier decision in *Dole,* we must agree with petitioner's contention that the limitation imposed by the board on the consideration of post-injury earnings is inconsistent with our prior decision in this matter. Moreover, the facts of the instant case clearly illustrate the arbitrariness of the board's proposed rule. Although there may be no "specific evidence . . . of actual steps taken by [Mrs. Goytia] to improve [herself] prior to the injury," a trier of fact, in view of the explanation of her ultimate acceptance of full-time employment, i.e., the maturation of her children, could very reasonably conclude that, even

time employment—the growth of her children—was clearly not "dependent upon the fact of the injury"; nevertheless the board refused to give any consideration to her post-injury earnings, thus revealing that its decision actually rested simply on the absence of any "specific evidence of . . . actual steps taken by [Mrs. Goytia] to improve [herself] prior to the injury."

[4]The *Jeffares* decision was decided subsequent to our initial *Goytia* opinion, and explicitly relied upon that decision; the *Esparza* case was cited with approval in the first *Goytia* opinion (1 Cal.3d at p. 897).

[5]The *Jeffares* decision states without qualification that "[a]n intent by an injured part-time employee to work full time in the future is a factor which must be considered in determining earning capacity." (6 Cal.App.3d at p. 552.)

at the time of injury, the applicant intended to seek full-time employment when her children were grown. If this were the case, and petitioner offered to produce evidence before the board to support such a conclusion,[6] Mrs. Goytia's post-injury, full-time earnings would certainly be a significant indicant of her "earning capacity . . . at the time of [her] injury." (See *Goytia* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 889, 897-898 [83 Cal. Rptr. 591, 464 P.2d 47].)

■ In sum, we conclude that the board, in refusing to consider the employee's post-injury earnings without inquiring into the applicant's actual intentions at the time of her injury, has failed to give the "due consideration" to her post-injury earnings mandated by our initial decision in this matter.

The decision of the Workmen's Compensation Appeals Board is annulled and the case is remanded to that board for further proceedings consistent with the views expressed herein.

Wright, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

---

[6]In her petition for reconsideration from the board's latest decision, Mrs. Goytia specifically requested a hearing on the issue of whether, at the time of her injury, she had already decided to seek full-time employment as soon as her children were old enough to care for themselves. Her petition also contained an offer of proof on this matter, supporting her contention that at the time of her injury she did intend to seek permanent employment in the near future. The WCAB refused reconsideration, indicating that whatever Mrs. Goytia's testimony might be, the board would not alter its decision.

Although a trier of fact would, of course, not be obligated to believe Mrs. Goytia's testimony as to her intentions at the time of her injury, the board could not properly conclude that the proffered evidence was fallacious without even hearing the applicant's testimony. Indeed, inasmuch as Mrs. Goytia's reasons for obtaining full-time employment were fully consistent with her proposed testimony, the board's summary rejection of such evidence can only be described as arbitrary.