[Civ. No. 13819. Fourth Dist., Div. Two. Mar. 17, 1975.]

GAIL M. PASCOE, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD, ALTA
VISTA CONVALESCENT HOSPITAL et al., Respondents.

**COUNSEL**

Wilford N. Sklar for Petitioner.

Yale I. Jones as Amicus Curiae on behalf of Petitioner.

Jones, Nelson, Burns & Endres and Harry M. Nelson for Respondents.

## OPINION

**TAMURA, Acting P. J.**—Petitioner seeks review and annulment of portions of the Workers' Compensation Appeals Board's[1] decision reducing temporary total disability benefits awarded her by the referee and setting aside a penalty which the referee had assessed against the employer's insurer. The issues raised by the petition are: (1) The proper method of determining average weekly earnings for the purpose of computing benefits; (2) the sufficiency of the evidence as to the terms of petitioner's employment; and (3) the propriety of the penalty assessed against respondent insurer for unreasonably refusing to pay more than the minimum benefits.

Petitioner applied for an adjudication of her worker's compensation claim against respondents Alta Vista Convalescent Hospital and its insurer, Argonaut Insurance Company. The testimony of the only two witnesses who testified at the referee's hearing, petitioner and Judy Gileno (nee Busick), may be summarized as follows:

On August 19, 1969, petitioner applied to Alta Vista for a position as a nurse's aide. She was then 22 years old and had successfully completed one year of nursing school. She had previously worked at Alta Vista as a nurse's aide in 1966 but had left to take a better job with a doctor. The hospital administrator, Judy Gileno, remembered her as a valuable employee and agreed to hire her full time as a nurse's aide. Petitioner was to begin work in about two weeks when a position would become available. It was agreed that her hours would be adjusted to avoid conflict with her nursing classes. The hospital needed good registered nurses and so Judy Gileno had petitioner promise that in a year's time, upon receiving her nursing license, she would continue to work for the hospital at an appropriate increase in salary.

On August 24th Judy Gileno telephoned petitioner and asked her to work a full shift that day in place of an aide who was ill. Petitioner agreed and while working that evening suffered the severe back injury for which she claims compensation. She finished her shift that day and a full shift the next day before seeing a doctor who advised her to cease work immediately.

Petitioner completed her nursing studies and, having passed a state

---

[1]The board's new designation became effective January 1, 1975. (Lab. Code, § 3200; Stats. 1974, ch. 1454.)

examination, was licensed as a registered nurse in August of 1970. Except for a short period in 1971, when she worked as a registered nurse at $5 per hour, her injury has prevented her from working in spite of three corrective surgical operations.

Petitioner was paid at the rate of $1.75 per hour for the two days she worked. Judy Gileno testified that she had agreed to pay petitioner $2.15 per hour for the first 60 days, $2.25 thereafter and $5 per hour upon receiving her license as a registered nurse. She explained that $1.75 was a part-time rate because petitioner was substituting for a sick employee. Petitioner thought she had been offered $2.15 per hour but could not be sure.

Respondents took the position that petitioner had never been hired to work full time, or at a rate higher than $1.75 per hour, and therefore qualified only for the minimum compensation benefits which she had been receiving. Respondents introduced an employer's report of industrial injury dated August 27, 1969, which reported petitioner's "hours worked per week" as 16 and petitioner's wages as $1.75 per hour. Judy Gileno acknowledged she had completed and signed the form. Respondents also introduced three pages of computer-printed payroll records. The parties stipulated the wage records showed that "nurse's aid[e]s usually have been hired at the rate of $1.65 to $1.75 per hour and have been advanced to no more than $2.00 per hour."

The referee found: (1) The work-related injury had caused temporary total disability; (2) petitioner's earnings were $70 per week ($1.75 x 40 hours) from August 26, 1969 to November 3, 1969, $80 per week ($2 x 40 hours) from November 4, 1969 to July 8, 1970,[2] and maximum thereafter; and (3) by paying compensation at the minimum rate of $25 per week, respondent insurer had unreasonably refused benefits. The referee made an award in accordance with his findings of earnings, together with an additional 10 percent as a penalty for unreasonable refusal to pay more than the minimum benefits.

The board granted respondent's petition for reconsideration, annulled the referee's award, and entered new findings to the effect that petitioner's average weekly earnings were minimal for the entire period and that accordingly no penalty was warranted.

---

[2]Petitioner took the state board examination for licensure as a registered nurse on July 8 and 9, 1970.

I

Petitioner's main contention is that the board erred in the method used to compute her indemnity benefits for the period after July of 1970. We agree.

Labor Code section 4653, as applicable to this case, provided that compensation benefits for employees suffering temporary total disability shall be 65 percent of average weekly earnings.[3] "Average weekly earnings" is a term of art in the law of workers' compensation referring to the earnings base or earning capacity used to compute indemnity payments. (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) § 12.01[1].) The method of computing average weekly earnings is set forth in Labor Code section 4453, reproduced in the margin.[4] Subdivision (d) of that section provides that when the employment is for less than 30 hours per week or where the formula set out in the preceding subdivisions "cannot reasonably and fairly be applied," the "average weekly earning capacity" at the time of injury must be determined. ■ As our Supreme Court has explained: "The purpose of this provision [Lab. Code, § 4453, subd. (d)] is to equalize for compensation purposes the position of the full-time, regularly employed worker whose earning capacity is merely a multiple of his daily wage and that of the worker whose wage at the time of injury may be aberrant·or otherwise a distorted basis for estimating true earning power." (*Argonaut Ins. Co.* v. *Industrial Acc. Com.,* 57 Cal.2d 589, 594 [21 Cal.Rptr. 545, 371

---

[3]Although the rate has subsequently been increased to two-thirds of the average weekly earnings (Stats. 1973, ch. 1023, operative Apr. 1, 1974), the rate in effect at the time of injury governs. (Lab. Code, § 4453.5.)

[4]Labor Code section 4453, as applicable to this case, provides:
"In computing average annual earnings for the purposes of temporary disability indemnity only, the average weekly earnings shall be taken at not less than thirty-eight dollars and forty-six cents ($38.46) nor more than one hundred thirty-four dollars and sixty-two cents ($134.62). . . . Between these limits the average weekly earnings . . . shall be arrived at as follows:
"(a) Where the employment is for 30 or more hours a week, and for five or more working days a week, the average weekly earnings shall be 95 percent of the number of working days a week times the daily earnings at the time of the injury.
"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .
"(c) If the earnings are at an irregular rate, such as piecework, 'or on a commission basis, or are specified to be by the week, month or other period, . . .
"(d) Where the employment is for less than 30 hours per week, or *where for any reason the foregoing methods of arriving at the average weekly earnings cannot reasonably and fairly be applied,* the average weekly earnings shall be taken at 95 percent of the sum which *reasonably represents the average weekly earning capacity of the injured employee at the time of his injury,* due consideration being given to his actual earnings from all sources and employments." (Italics supplied.)

P.2d 281].) Accordingly, the objective in such cases is to determine "true earning power" for, as stated in another decision, "earning capacity at the time of injury is the touchstone of average earnings in California." (*West* v. *Industrial Acc. Com.*, 79 Cal.App.2d 711, 722 [180 P.2d 972].)

■ In light of the foregoing principles, the board erred in failing to treat separately the period after July of 1970 when petitioner, pursuant to nursing studies she was undertaking at the time of her injury, became a registered nurse. The disputed factual issues regarding the terms of petitioner's employment, which we consider in a later portion of this opinion, have no bearing on the proper computation of benefits for this later period. Whether or not petitioner was employed on a part-time or full-time basis, her earnings at the time of injury did not reasonably or fairly reflect her earning capacity as a registered nurse. Accordingly, Labor Code section 4453, subdivision (d), should have been applied. Under that subdivision, as interpreted by the case law, petitioner was entitled to the rate of benefits appropriate for a registered nurse if it appeared that, but for the injury, she would have been employed full time as a registered nurse during the period following her certification. (See *Goytia* v. *Workmen's Comp. App. Bd.*, 1 Cal.3d 889, 895 [83 Cal.Rptr. 591, 464 P.2d 47]; *Jeffares* v. *Workmen's Comp. App. Bd.*, 6 Cal.App.3d 548, 552 [86 Cal.Rptr. 288]; *Kampman* v. *County of Los Angeles*, 38 Cal.Comp.Cases 439, 442.) ■ Factors to be considered in determining earning capacity are the employee's age and health, skill and education, and willingness and opportunities to work. (*Goytia* v. *Workmen's Comp. App. Bd.*, *supra*, 1 Cal.3d 889, 895-896; *Argonaut Ins. Co.* v. *Industrial Acc. Com.*, *supra*, 57 Cal.2d 589, 595.) The term "earning capacity" contemplates an employee's " 'general over-all capability and productivity' "; it is a concept to be used to estimate "the monetary effects of a disability on *future* earnings." (*Goytia* v. *Workmen's Comp. Appeals Bd.*, 6 Cal.3d 660, 663 [100 Cal.Rptr. 136, 493 P.2d 864].) Enhancement of *earning potential* through completion of studies being pursued at the time of injury is a factor which must be considered. (*Jeffares* v. *Workmen's Comp. App. Bd.*, *supra*, at p. 552.)

Relying on *Argonaut Ins. Co.* v. *Industrial Acc. Com.*, *supra*, 57 Cal.2d 589, respondents contend that even if post-injury developments must be considered in determining average weekly earnings for purposes of permanent disability, temporary disability benefits may be determined solely by reference to earnings at the time of injury. This position finds no support in the case relied upon or in the statutes. ■ Rather, it has been consistently held that the principles according to which average

weekly earnings are calculated apply to temporary and permanent disability alike. (*Argonaut Ins. Co.* v. *Industrial Acc. Com., supra,* 57 Cal.2d 589, 594-595; *Jeffares* v. *Workmen's Comp. App. Bd., supra,* 6 Cal.App.3d 548, 552.) The only difference, not material here, is that a permanent award must concern itself with a longer period of time than a temporary award.

Petitioner's employment history, as set forth in her application of employment dated August 19, 1969, shows she held medically related jobs almost continuously from August of 1966 to July of 1968 at which time she became ill, quit her job, and shortly thereafter began nursing school. At the time of her injury, she had completed half of the two-year course of nurse's training. Judy Gileno, who was acquainted with petitioner's work as a nurse's aide, testified that at the time of injury she had no doubt petitioner would become a registered nurse. Gileno also testified that positions were always available for registered nurses. In 1971 when her doctor advised her to seek employment, petitioner immediately obtained a position as a registered nurse at a salary well above that required for maximum benefits. Therefore, the only reasonable conclusion to be drawn from the record is the one drawn by the referee, that petitioner was entitled to maximum indemnity benefits for the period after July of 1970.

Maximum benefits for both permanent and temporary disability were awarded under similar circumstances in *Esparza* v. *Regents of the University of California,* 31 Cal.Comp.Cases 433, cited with approval in *Goytia* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 889, 897. In *Esparza* the employee was a part-time student research assistant who was scheduled to receive a master's degree in chemistry six months after the date of his injury. The board found that but for the injury he would have received maximum earnings after obtaining his degree and awarded maximum benefits from that date forward. (See also, *Goytia* v. *Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d 660; *Jeffares* v. *Workmen's Comp. App. Bd., supra,* 6 Cal.App.3d 548.)

In support of its decision the board cites only *Moreno* v. *W.C.A.B.,* 39 Cal.Comp.Cases 109, in which the Court of Appeal denied a writ of review. We need not decide whether the law was correctly applied in that case for it is clearly distinguishable. Mrs. Moreno had been a full-time, permanent employee for five years on the date of her injury. Her petition to have her benefits increased to reflect wage increases granted to other employees in her former job classification after the date of her injury was

denied by the board. That decision has no application where, at the time of injury, the employee was actually in the process of improving his earning potential. (See *Goytia* v. *Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d 660.)

## II

As to the period covering petitioner's last year in nursing school, the problem is somewhat different. Again, the objective is to predict what would have happened but for the injury. However, as the parties appear to be in agreement that petitioner's employment contract with Alta Vista correctly reflects what she would have earned that year, average weekly earnings under Labor Code section 4453 must be calculated according to the terms of that contract. The referee found that the contract was for full-time employment but the board apparently believed otherwise. There is also disagreement as to the rate of pay petitioner was to receive.

Petitioner correctly points out that the board's findings must fall if not supported by substantial evidence in the light of the entire record and that, as a general rule, the board must accept as true the intended meaning of evidence both uncontradicted and unimpeached. (*Lamb* v. *Workmen's Comp. Appeals Bd.,* 11 Cal.3d 274, 280-281 [113 Cal.Rptr. 162, 520 P.2d 978].) Moreover, when a referee's finding of compensable injury is supported by solid credible evidence, the board should accord it great weight and should reject it only on the basis of contrary evidence of considerable substantiality. (*Lamb* v. *Workmen's Comp. Appeals Bd., supra,* at p. 281.) The same principle should govern review of a referee's finding on other material factual issues. Measured against those standards, the board's finding that petitioner was hired only part-time by Alta Vista cannot be upheld.

Both petitioner and Judy Gileno testified the employment agreement was for full-time work to begin two weeks after hiring. Respondents called no witnesses and the only evidence they produced relevant to this issue was the "Employer's Report of Industrial Injury," a form which Judy Gileno filled out two days after the accident. On the questionnaire Gileno reported petitioner's "days worked per week" as two. It was only natural for Gileno to interpret the form as calling for a description of past events rather than a full account of the contractual relations of the parties. Since petitioner had indeed worked only two days when she was injured, there is no inconsistency between the entry in the form and the witnesses' testimony that petitioner was to fill a full-time position which was about to become vacant.

As no other evidence related to this issue, the only permissible conclusion is that petitioner was hired to work on a full-time basis.

As to the rate of pay, the evidence was less clear. The employer's injury report form shows applicant was paid at a rate of $1.75 per hour for the two days she worked. Judy Gileno testified that when applicant began full-time employment she was to make $2.15 per hour for the first 60 days and $2.25 per hour thereafter. Applicant thought she had been offered $2.15 per hour but couldn't be sure. The employer's records showed $2 was usually the maximum pay for nurse's aides. Gileno testified an unusually high rate was justified because of applicant's abilities and the prospect she might continue at Alta Vista as a registered nurse.

The referee set the rate at $1.75 per hour from August 26, 1969 to November 3, 1969 and $2 per hour from November 4, 1969 to July 8, 1970. In his report on reconsideration, the referee stated these rates were "a fair approximation of what the record revealed," recognizing that "in such a situation, after a long period of time, the memory may be understandably imprecise." He also noted Gileno had testified to the existence of hospital records showing the exact terms of petitioner's employment. Although subpoenaed by petitioner, respondents unaccountably failed to produce these records.

In its decision the board stated, "we are of the opinion that applicant was hired to work as a nurse's aide at approximately $1.65 or $1.75 per hour." However, the only finding made by the board was that applicant's weekly earnings were minimal. Since the board based this finding on the erroneous premise that applicant was only to work part-time, it did not need to decide the precise rate of pay; even at a rate of $2.25 per hour, earnings would have been minimal when calculated on a work week of only 16 hours.

Considered as a whole, the record contains no substantial evidence to support a finding that the rate of pay was lower than that set by the referee. Gileno's testimony would support a higher award, but the referee was the best judge of the accuracy of her memory and petitioner asks only that his determination be reinstated. On the other hand, the referee's findings were completely compatible with the stipulation entered regarding the employer's pay records, the only other evidence on this issue. Therefore, as to the period from August 26, 1969 to July 8, 1970, petitioner's earnings as found by the referee should not be disturbed.

## III

The final issue is whether respondents are liable for the penalty provided by Labor Code section 5814 for unreasonable refusal to pay more than the minimum benefits.[5]

■ The principles governing application of section 5814 have been clearly stated. It is to be liberally construed in the employee's favor; the only satisfactory excuse for refusal or delay in payment of disability benefits is genuine doubt from a medical or legal standpoint as to the liability for benefits; and the burden is on the employer or its insurer to present substantial evidence on which a finding of such a doubt may be based. (*Kerley* v. *Workmen's Comp. App. Bd.,* 4 Cal.3d 223, 227-230 [93 Cal.Rptr. 192, 481 P.2d 200]; *Berry* v. *Workmen's Comp. App. Bd.,* 276 Cal.App.2d 381, 384-385 [81 Cal.Rptr. 65].)

From the date of injury until the referee issued his award in May of 1974, respondent insurer paid indemnity benefits at the minimum rate of $25 per week. The insurer based its calculation solely on petitioner's earnings at the time of her injury, $1.75 per hour for a 16-hour week. Use of this standard may only be described as arbitrary.

The employer's report of industrial injury informed the insurer that petitioner was working 16 hours per week when injured. To determine benefits the insurer would then have consulted Labor Code section 4453, set forth in footnote 4 *supra.* The insurer would have seen that subdivisions (a) through (c) were inapplicable. In other words, the insurer could not take the short road by using pre-injury earnings to calculate average weekly earnings. The insurer had to determine "earning capacity" under subdivision (d).

This rather obvious proposition deserves re-emphasis. Where an employee is working more than 30 hours per week at the time of injury, it may not be immediately apparent whether subdivision (a) or subdivision (d) of Labor Code section 4453 is controlling and an insurer may conceivably be permitted to calculate benefits on the basis of earnings at

---

[5]Labor Code section 5814 provides: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. Such delay or refusal shall constitute good cause under Section 5803 to rescind, alter or amend the order, decision or award for the purpose of making the increase provided for herein."

the time of injury until notified otherwise. But we need not decide that question, for those are not the facts here.  ■  Where, as here, initial reports indicate the employee was working less than 30 hours per week when injured, then the insurer may not calculate benefits on the basis of actual earnings at the time of injury until it has investigated further to determine the rate appropriate under subdivision (d) of Labor Code section 4453.

The reasoning just described contains no difficult legal analysis, but only a reading of the statute. That Labor Code section 4453 means what it says was determined at least by the time of *Argonaut Ins. Co.* v. *Industrial Acc. Com., supra,* 57 Cal.2d 589, seven years prior to petitioner's injury. The decision in *Esparza* v. *Regents of the University of California, supra,* 31 Cal.Comp.Cases 433, also preceded the injury.

■  Respondent insurer introduced no evidence to show it performed its duty under subdivision (d) of Labor Code section 4453 to investigate petitioner's earning capacity. Rather, the record shows that even after respondent was informed petitioner was a licensed registered nurse, it continued compensation at the minimum rate. As to the benefits for the period prior to August of 1970, no substantial evidence was produced to support the contention that petitioner was only to work part-time while attending nursing school.

Respondents failed to produce substantial evidence tending to show a genuine doubt existed, either from a legal or a factual viewpoint, that petitioner was entitled only to minimum benefits. It follows that the referee was correct in assessing the statutory penalty.

The decision of the board is annulled and the matter is remanded for further proceedings consistent with this opinion.

Kaufman, J., and McDaniel, J., concurred.