[Civ. No. 52057. Second Dist., Div. Five. June 1, 1978.]

WESTSIDE PRODUCE COMPANY et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and
MARIA AVILA, Respondents.

COUNSEL

Grancell, Kegel & Tobin and Marlon H. Bateman for Petitioners.

Joseph Gallegos for Respondents.

OPINION

**HASTINGS, J.**—Petitioners Westside Produce Company (Westside Produce) and its workers' compensation insurance carrier, Pan American Underwriters (Pan American) contend the appeals board erred in determining the injured's earnings for purposes of temporary disability in that the appeals board failed to recognize that the injured was a seasonal employee. We find substantial evidence does not support the basis utilized by the appeals board in computing the injured's earnings for purposes of temporary disability. Accordingly, we annul the appeals board's finding as to earnings.

## I

The injured, Maria Avila, sustained injury arising out of and in the course of her employment to her left wrist on January 21, 1977, while employed by Westside Produce.

In her "Application for Adjudication of Claim" Avila alleged her earnings were maximum (i.e., her earnings entitled her to the maximum temporary disability rate allowed by law). In their answer to the application, Westside Produce and Pan American alleged Avila's employment was "seasonal." When this matter proceeded to hearing, Westside Produce produced a wage statement which showed the following pay periods and earnings for Avila while employed by Westside Produce:

| 12/31/76 | - | 1/6/77 | | 113.56 |
|---|---|---|---|---|
| 1/7/77 | - | 1/13/77 | | 122.40 |
| 1/14/77 | - | 1/20/77 | | 184.79 |
| 1/21/77 | - | 1/27/77 | | 27.71 |
| | | | TOTAL | 448.46 |

The "wage statement" also stated that Avila was a "seasonal" employee and that had she not been injured, the employment with Westside Produce would only have lasted until January 28, 1977.[1]

At the hearing, this wage statement was admitted into evidence without objection by Avila and she offered no oral or documentary evidence to rebut the information contained in the wage statement. However, Avila was given 10 days from the hearing to file evidence of her 1976 earnings. Avila filed her 1976 tax return which showed total earnings of $4,684.47 in 1976 while employed with Tanaka Brothers.

The judge ruled that since Avila's average earnings at Westside Produce were $140 per week, she was accordingly entitled to a temporary disability rate of $93.33 per week.[2] Temporary disability was awarded

---

[1]Avila's last date of employment at Westside Produce was January 21, 1977. The January 27, 1977 date is apparently the end of the pay period.

[2]Labor Code section 4653 provides: "If the injury causes temporary total disability, the disability payment is two-thirds of the average weekly earnings during the period of such disability, consideration being given to the ability of the injured employee to compete in an open labor market."

from May 9, 1977 through May 12, 1977, and continuing thereafter until temporary disability terminated.[3]

In his report and recommendation on petition for reconsideration, the judge stated: "The only 'evidence' that the applicant [Avila] was a 'seasonal' employee and that the season ended on January 28, 1977, is contained at the bottom of the Wage Statement filed by the employer [Westside Produce]. These statements are conclusionary, at best, and, giving the applicant the benefit of Labor Code section 3202,[4] the court attached no great weight to them. Further, the court's decision in this case is supported by the Supreme Court's decision in *Goytia* v. *Workers' Comp. Appeals Bd.*" (1972) 6 Cal.3d 660 [100 Cal.Rptr. 136, 493 P.2d 864, 37 Cal. Comp. Cases 104].

Westside Produce and Pan American sought reconsideration contending the temporary disability rate was in error. The board denied reconsideration. In its opinion and order denying reconsideration, the board stated: "The judge's findings are justified by the evidence. Petitioners [Westside Produce] offered no testimony or other forms of evidentiary proof that applicant [Avila] was in fact a 'seasonal' employee. Lacking such evidence, the Board concludes that the judge correctly found that on the bais [*sic*] of her earnings while working for her defendant employer and her earning capacity (see *Goytia* v. *Workers' Comp. Appeals Bd.* (1972) 6 Cal.3d 660 [100 Cal.Rptr. 136, 493 P.2d 864, 37 Cal. Comp. Cases 104]), she is entitled to a compensation rate of $93.33 per week for purposes of temporary disability indemnity. According the judge's findings the great weight to which they are entitled (*Garza* v. *WCAB* (1970) 3 Cal.3d 312 [90 Cal.Rptr. 355, 475 P.2d 451, 35 Cal. Comp. Cases 500]), the board is disinclined to disturb the findings and award in this matter."

## II

Labor Code section 4453 provided: "Except as provided in Section 4453.1, in computing average annual earnings for the purposes of temporary disability indemnity and permanent total disability indemnity only, the average weekly earnings shall be taken at not less than fifty-two

---

[3]Westside Produce apparently voluntarily paid temporary disability from January 22, 1977, to May 9, 1977.

[4]Labor Code section 3202 provides: "The provisions . . . of [the Workers' Compensation Act] shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment."

dollars and fifty cents ($52.50) nor more than two hundred thirty-one dollars ($231). In computing average annual earnings for purposes of permanent partial disability indemnity, except as provided in Section 4659, the average weekly earnings shall be taken at not less than forty-five dollars ($45) nor more than one hundred five dollars ($105). Between these limits the average weekly earnings, except as provided in Section 4456 to 4459, shall be arrived at as follows:

"(a) Where the employment is for 30 or more hours a week and for five or more working days a week, the average weekly earnings shall be 100 percent of the number of working days a week times the daily earnings at the time of the injury.

"(b) Where the employee is working for two or more employers at or about the time of the injury, the average weekly earnings shall be taken as 100 percent of the aggregate of such earnings from all employments computed in terms of one week; but the earnings from employments other than the employment in which the injury occurred shall not be taken at a higher rate than the hourly rate paid at the time of the injury.

"(c) *If the earnings are* at an irregular rate, such as piecework, or on a commission basis, or are specified *to be by week, month or other period, then the average weekly earnings mentioned in subdivision (a) above shall be taken as 100 percent of the actual weekly earnings averaged for such period of time, not exceeding one year, as may conveniently be taken to determine an average weekly rate of pay.*

"(d) Where the employment is for less than 30 hours per week, or *where for any reason the foregoing methods of arriving at the average weekly earnings cannot reasonably and fairly be applied, the average weekly earnings shall be taken at 100 percent of the sum which reasonably represents the average weekly earning capacity of the injured employee at the time of his injury, due consideration being given to his actual earnings from all sources and employments.*" (Italics added.)

■ In determining the earnings for purposes of temporary disability, the question is whether the injured would have continued working at a given wage for the duration of the disability. ■ ■■■ (*Argonaut Ins. Co.* v. *Industrial Acc. Com. (Montana)* (1962) 57 Cal.2d 589, 597 [21 Cal.Rptr. 545, 371 P.2d 281]; *California Comp. & Fire Co.* v. *Industrial Acc. Com. (Colston)* (1962) 57 Cal.2d 598, 599 [21 Cal.Rptr. 549, 371 P.2d 285]; *California Comp. & Fire Co.* v. *Industrial Acc. Com. (Stevens)* (1962)

57 Cal.2d 600, 601 [21 Cal.Rptr. 551, 371 P.2d 287]; *Pascoe* v. *Workmen's Comp. Appeals Board* (1975) 46 Cal.App.3d 146 [120 Cal.Rptr. 199]; *Jeffares* v. *Workmen's Comp. App. Bd.* (1970) 6 Cal.App.3d 548 [86 Cal.Rptr. 288]; *W. M. Lyles Co.* v. *Workmen's Comp. App. Bd.* (1969) 3 Cal.App.3d 132, 137-138 [82 Cal.Rptr. 891].)[5]

The unrefuted evidence contained in the wage statement offered by Westside Produce was that Avila's employment with it was seasonal and would have ended on January 28, 1977. Since Avila did not in any way rebut this, the judge should have found accordingly. As a general rule, the board must accept as true the intended meaning of evidence both uncontradicted and unimpeached. (*Lamb* v. *Workmen's Comp. Appeals Board* (1974) 11 Cal.3d 274, 281 [113 Cal.Rptr. 162, 520 P.2d 978]; *Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317-318 [90 Cal.Rptr. 355, 475 P.2d 451]; *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 639 [83 Cal.Rptr. 208, 463 P.2d 432]; *McAllister* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 408, 411 [71 Cal.Rptr. 697, 445 P.2d 313].) We can only assume that the reason Avila did not deny the information in the wage statement was that it was true.[6]

Since Avila was hired as a seasonal worker, temporary disability is payable based upon earnings at the time of injury only for that period the employment would have continued. After the employment would have terminated, Avila is entitled to temporary disability considering her past earnings history and her anticipated future earnings had she not been injured. (Lab. Code, § 4453, subds. (c), (d); *Goytia, supra,* 6 Cal.3d 660; *Goytia* v. *Workers' Comp. Appeals Bd.* (1970) 1 Cal.3d 889 [83 Cal.Rptr. 591,

---

[5]"An estimate of earning capacity is a prediction of what an employee's earnings would have been had he not been injured. Earning capacity, for the purposes of a temporary award, however, may differ from earning capacity for the purposes of a permanent award. In the former case the prediction of earnings need only be made for the duration of the temporary disability. In the latter the prediction is more complex because the compensation is for loss of earning power over a long span of time. Thus an applicant's earning capacity could be maximum for a temporary award and minimum for a permanent award or the reverse." (*Argonaut Ins. Co.* v. *Industrial Acc. Com. (Montana), supra,* 57 Cal.2d 589, 594-595; see also *Jeffares* v. *Workmen's Comp. App. Bd., supra,* 6 Cal.App.3d 548, 552.) Here, we only deal with the question of the temporary disability rate, the trial judge below made no award of permanent disability as Avila was still totally temporarily disabled.

[6]As Avila did not object to the admission of the wage statement into evidence, we need not decide if the declarations therein that Avila's employment was seasonal and employment would have terminated on January 28, 1977, are properly admissible in written form as opposed to oral testimony. (Cf. Lab. Code, § 5703, subd. (c), with Lab. Code, § 5708.)

464 P.2d 47]; *Argonaut, supra,* 57 Cal.2d 589; *Jeffares, supra,* 6 Cal.App.3d 548; *W. M. Lyles Co., supra,* 3 Cal.App.3d 132; *Hammonds* v. *Industrial Indemnity Co.* (1971) 36 Cal.Comp.Cases 652; *Ulibarri* v. *Owens-Illinois Glass Co.* (1970) 35 Cal.Comp.Cases 429.)

█ The only evidence other than the wage statement on the issue of earnings is Avila's "W-2 form" and tax return for her 1976 earnings at Tanaka Brothers. Avila was entitled to show what her earnings during the period of temporary disability would have been had she not been injured on January 21, 1977 (see *Goytia, supra,* 6 Cal.3d 660; *Goytia, supra,* 1 Cal.3d 889), but she did not do so. There is also no evidence in the record that Avila's earnings in 1976 were atypical or unrepresentative of her true earning capacity. (See *Argonaut, supra,* 57 Cal.2d at pp. 596-597; 1 Herlick, Cal. Workers' Compensation Law Handbook (2d ed. 1978) § 5.9.) Accordingly, the judge should have calculated the temporary disability rate after January 28, 1977, based upon Avila's average weekly earnings for a period of up to one year prior to her injury (Lab. Code, § 4453, subd. (c).)[7]

The award and the board's opinion and order denying reconsideration are annulled, and the matter remanded to the board for further proceedings consistent with this opinion.

Kaus, P. J., and Ashby, J., concurred.

---

[7]The board has referred the court to *Howell* v. *Industrial Accident Com.* (1941) 47 Cal.App.2d 326 [117 P.2d 919]; *California C.I. Exch.* v. *Indus. Acc. Com. (McDonald)* (1933) 135 Cal.App. 746 [27 P.2d 782]; and *Aetna Life Ins. Co.* v. *Indus. Acc. Com. (Billings)* 130 Cal.App. 488 [20 P.2d 372]. Apparently, the board considers these cases to support its decision in this matter.

*Howell, McDonald* and *Billings* merely demonstrate that the determination of average earnings for purposes of the disability rate is not confined to actual earnings prior to the injury but rather surrounding circumstances and conditions are to be considered. (See discussion of *McDonald, Billings* and the similar case of *Colonial etc. Ins. Co.* v. *Ind. Acc. Com. (Miller)* (1941) 47 Cal.App.2d 487 [118 P.2d 361] in *Goytia* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 889, 896-897; see also in *West* v. *Industrial Acc. Com.* (1947) 79 Cal.App.2d 711, 724-726 [180 P.2d 972], discussion of *McDonald* and *Billings.)*

Here, the record is silent as to surrounding facts and circumstances of Avila's earnings history. All we have is Avila's earnings at Westside Produce and Tanaka Brothers. As pointed out in *Argonaut Ins. Co.* v. *Industrial Acc. Com. (Montana), supra,* 57 Cal.2d at page 595, there must be "evidence that will at least demonstrate the reasonableness of the determination made." (See also *W. M. Lyles Co., supra,* 3 Cal.App.3d at p. 138.)