No. A037373. First Dist., Div. Two. Dec. 17, 1987.]

LANA ELLIOT, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, WILLIAM
MURPHY et al., Respondents.

.. 

**COUNSEL**

Barry J. Williams, Airola, Williams & Dietrich and Airola, Williams, Dietrich & Otis for Petitioner.

Sue E. Manahl, T. Kirk McBride and Rucka, O'Boyle, Lombardo & McKenna as Amici Curiae on behalf of Petitioner.

James R. Libien, Anne H. Brown and Hanna, Brophy, MacLean, McAleer & Jensen for Respondents.

**OPINION**

KLINE, P. J.—We granted the applicant's petition for a writ of review to determine whether the Workers' Compensation Appeals Board (Board), in denying the applicant's petition for reconsideration, erred in computing her temporary total disability benefits pursuant to Labor Code sections 4453.1 and 4453, subdivision (c).[1]

On October 31, 1985, the applicant (Lana Elliot) fractured her left wrist when she fell from a ladder while trimming a tree for her employers, Mr. and Mrs. William Murphy (Murphys). The parties stipulated that the

---

[1]Unless otherwise specified, all code references herein are to the Labor Code, and all subsection references are to section 4453.

applicant's injury occurred in the course of her part-time employment as a domestic for the Murphys, and that from July 9, 1985, through October 26, 1985, her earnings totaled $264, based on an hourly rate of $4 per hour. Applicant had also been employed as an emergency medical technician (EMT) for Solano Ambulance Company from January 27, 1985, until she was laid off for lack of work on October 21, 10 days before her injury while working for the Murphys. Applicant had earned $8,334.42 while employed by the ambulance company.

After the injury, applicant sought work with a nursing care registry at $7 per hour, but she was unable to accept any job offers because she could not lift patients as a result of her wrist injury. On April 1, 1986, the ambulance company called the applicant back to work as an EMT, but her wrist injury prevented her from returning to work. Additional evidence of her prior earnings showed that in 1982, while employed by Pacific Telephone Company, she earned $12,546.30, and through September 1983 she had earned $10,217.85. After September 1983 and during 1984, she worked little because she was attending school for training as an EMT.

The workers' compensation judge (WCJ) concluded that the applicant was an employee within the meaning of Labor Code section 3351, subdivision (d), and that her temporary total disability indemnity must be based on Labor Code section 4453.1. The WCJ found, however, that her temporary total disability benefits from the time of injury (Oct. 31, 1985) to April 1, 1986, were limited to her actual loss of earnings while employed by the Murphys, and therefore her temporary total disability benefits were limited to $20.35 per week (1.2 times actual loss of earnings). The WCJ also found that applicant would have returned to part-time employment by the ambulance company on April 1, 1986, had she not been injured, and therefore, based on her higher earning capacity as an EMT for the ambulance company, her temporary total disability benefits after April 1, 1986, should increase to $112 per week, the minimum under section 4453, subdivision (a)(2). The WCJ further found a permanent disability rate of $128.22 per week. In denying the applicant's petition for reconsideration, the Board adopted the findings and recommendation of the WCJ.

 Petitioner contends that the WCJ and the Board, in denying reconsideration, erred in basing her temporary total disability rate from the date of injury to April 1, 1986, solely on her *actual* loss of weekly earnings while employed by the Murphys. Petitioner argues that the WCJ should have based her temporary total disability benefits on her average weekly *earning capacity,* as evidenced by her history of earnings from other employers, and as provided in section 4453, subdivision (c)(4).

Labor Code section 4453.1 provides, in relevant part: "In computing average annual earnings for the purposes of temporary disability indemnity, the average weekly earnings for a claimant whose last employment was either (i) as an employee as defined in subdivision (d) of Section 3351, or . . . , shall be taken at not less than the lesser of the minimum amounts specified in subdivision (a) of Section 4453, or 1.2 times the employee's actual weekly earnings from all employers, nor more than . . . three hundred thirty six dollars ($336), for injuries occurring on and after January 1, 1984. Between these limits, the average weekly earnings, except as provided in Sections 4456 to 4459, shall be arrived at as provided in paragraphs (1) through (4), inclusive, of subdivision (c) of Section 4453."

Section 4453.1 provides a two-step procedure for computing the temporary disability indemnity rate for a domestic employee. First, it is necessary to determine the minimum and maximum benefits based on the employee's "actual weekly earnings from all employers." In this case, the WCJ properly found that the applicant's actual loss of weekly earnings was limited to her earnings while employed by the Murphys since they were her only employer at the time of injury. The proper minimum benefit, therefore, was 1.2 times the average weekly wage, or $20.35 per week.

The second step consists of determining, between the minimum and maximum amounts, the "average weekly earnings" as provided in section 4453, subdivision (c), paragraphs (1) through (4). It is this step that the WCJ failed to complete correctly.

Subdivision (c)(1) provides: "(1) Where the employment is for 30 or more hours a week and for five or more working days a week, the average weekly earnings shall be 100 percent of the number of working days a week times the daily earnings at the time of the injury." This subdivision is inapplicable because the applicant was not employed for 30 or more hours a week and for five or more working days a week.

Subdivision (c)(2) provides: "Where the employee is working for two or more employers at or about the time of the injury, the average weekly earnings shall be taken as 100 percent of the aggregate of such earnings from all employments computed in terms of one week; but the earnings from employments other than the employment in which the injury occurred shall not be taken at a higher rate than the hourly rate paid at the time of the injury." This subdivision is inapplicable because the applicant was not working for two or more employers at or about the time of the injury. We do not think the words "at or about the time of injury" should be construed to include an employment that terminated 10 days before the injury. To do so would merely create additional uncertainty as to the applicability of

subdivision (c)(2). The Legislature apparently inserted the words "at or about the time of injury" to cover the situation where the employee was employed by two or more employers at the time of injury, but was actually working for only one of the two or more employers when the injury occurred.

Subdivision (c)(3) provides: "If the earnings are at an irregular rate, such as piecework, or on a commission basis, or are specified to be by week, month, or other period, then the average weekly earnings mentioned in subdivision (a) shall be taken as 100 percent of the actual weekly earnings averaged for such period of time, not exceeding one year, as may conveniently be taken to determine an average weekly rate of pay." This subdivision is inapplicable because the applicant's earnings were not at an "irregular rate."

Subdivision (c)(4) provides: "Where the employment is for less than 30 hours per week, or where for any reason the foregoing methods of arriving at the average weekly earnings cannot reasonably and fairly be applied, the average weekly earnings shall be taken at 100 percent of the sum which reasonably represents the average weekly earning capacity of the injured employee at the time of his or her injury, due consideration being given to his or her actual earnings from all sources and employments." This subdivision applies to this case because the applicant was employed for less than 30 hours per week at the time of injury. ■ And, as Chief Justice Traynor explained in his dissenting opinion in *Goytia* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 889, 899 [83 Cal.Rptr. 591, 464 P.2d 47], the purpose of this subdivision is " 'to equalize for compensation purposes the position of the full-time, regularly employed worker whose earning capacity is merely a multiple of his daily wage and that of the worker whose wage at the time of the injury may be aberrant or otherwise a distorted basis for estimating true earning power.' (*Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1962) 57 Cal.2d 589, 594 [21 Cal.Rptr.545, 371 P.2d 281].) Thus, when a regularly employed worker for reasons beyond his control, such as illness, strikes, lay offs, temporary recession, or other factors affecting the opportunity for full-time employment in his customary occupation, is receiving a wage at the time of his injury that does not fairly reflect his earning capacity as suggested by his work history, subdivision (d) [presently (c)(4)] permits the board to consider that history and other relevant information in determining his earning capacity."

■ Subdivision (c)(4) provides for temporary and permanent disability indemnity based on the employee's "average weekly earning capacity" and is not limited to "actual earnings." In *Goytia* v. *Workmen's Comp. App. Bd., supra,* 1 Cal.3d 889, 894, the Supreme Court explained: "Earning capacity

is not locked into a straitjacket of the actual earnings of the worker at the date of injury; the term contemplates his general over-all capability and productivity; the term envisages a dynamic, not a static, test and cannot be compressed into earnings at a given moment of time. The term does not cut 'capacity' to the procrustean bed of the earnings at the date of injury. A comparison of the first three subdivisions of section 4453 with the fourth shows that the Legislature deliberately established earning capacity as the test for the fourth subdivision as distinguished from the actual earnings for the other three subdivisions. Section 4453 provides for the computation of both temporary and permanent disability indemnity. Subdivisions (a), (b), and (c) [presently (c)(1), (c)(2), and (c)(3)] relate to full-time employees, employees working for two or more employers, and employment at an irregular rate, such as piecework or work on a commission basis. Each of those subdivisions provide for computation of 'average annual earnings for purposes of permanent disability indemnity' based upon earnings prior to the injury." (Fn. omitted.)

■ In determining the applicant's "average weekly earning capacity" under subdivision (c)(4) due consideration is to be given to his or her actual earnings from all sources and employments. However, other relevant factors must also be considered such as the applicant's history of earnings before the injury, postinjury earnings, the applicant's ability to work, age, health, skill, education, and opportunities to work. (*Argonaut Ins. Co.* v. *Industrial Acc. Com., supra,* 57 Cal.2d 589, 594-595; *Goytia* v. *Workman's Comp. App. Bd., supra,* 1 Cal.3d 889, 894-895, appeal after remand, 6 Cal.3d 660; *Jeffares* v. *Workmen's Comp. App. Bd.* (1970) 6 Cal.App.3d 548 [100 Cal.Rptr. 136, 493 P.2d 864]; *Pascoe* v. *Workmen's Comp. App. Bd.* (1975) 46 Cal.App.3d 146 [120 Cal.Rptr. 199]; *Thrifty Drug Stores, Inc.* v. *Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d. 937 [157 Cal.Rptr. 459]; *Lujan* v. *Workers' Comp. Appeals Bd.* (1985) 175 Cal.App.3d 212 [220 Cal.Rptr. 561].)

■ In this case, the WCJ and the Board erred in basing the applicant's temporary total disability indemnity rate on her actual earnings without considering her history of earnings from other employers and other relevant factors pertaining to her earning capacity.

Accordingly, the Board's order denying reconsideration is reversed, and the matter is remanded to the Board with directions to award petitioner temporary total disability indemnity at a rate consistent with the views expressed in this opinion.

Rouse, J., concurred.

**BENSON, J.,** Dissenting—The language of Labor Code section 4453, subdivision (c)(2), is clear: "Where the employee is working for two or more employers *at or about the time of the injury,* the average weekly earnings shall be taken as 100 percent of the aggregate of such earnings from all employments computed in terms of one week; but the *earnings from employments other than the employment in which the injury occurred shall not be taken at a higher rate than the hourly rate paid at the time of the injury.*"

The record reflects that the petitioner worked part time for the Solano Ambulance Company from January 27, 1985, until her temporary layoff on October 21, 1985. Intermittently she was employed part time by the Murphys from July 9, 1985, to October 31, 1985. Thus 10 days separate her ambulance company employment and the occurrence of the injury while working for the Murphys. During the time frames mentioned she earned $8,334 from the ambulance company and $264 from the Murphys. In my mind these facts constitute "working for two . . . employers . . . about the time of the injury." Moreover, in my judgment, these facts are clearly representative of the situation the Legislature intended to address when it enacted Labor Code section 4453, subdivision (c)(2).

In short, the majority would read into subdivision (c)(2) a requirement that two or more employment relationships be in existence at the time of injury before the subsection can become operative. There is nothing in the subsection that warrants such a limited interpretation. If an employer/employee relationship existed "about" the time of the injury, though it may not exist on the day of the injury, that is sufficient to trigger the computation process under subdivision (c)(2).

The key is whether the multiple employer/employee relationships existed at *or about* the time of the injury. The adverb "about" refers to "near in time" (see Random House Dict. of the English Language (1966) p. 4, col. 3). In *Price* v. *Industrial Acc. Com.* (1935) 9 Cal.App.2d 213, 216 [49 P.2d 294], cited by the majority, the compensation carrier sought to raise a statute of limitation defense. Rejecting the carrier's contention the appellate court observed: "The statement '*about* November, 1933', is broad enough to include the entire month of December, and cannot be tortured into an admission that the injury occurred prior to the 22nd of that month." Similarly here, the employment with the ambulance company 10 days before the accident is near enough in time to be regarded as employment ". . . about the time of" the accident.

It seems clear to me that the Legislature in enacting Labor Code section 4453, subdivision (c)(2), was attempting to strike an appropriate balance between the conflicting legislative goals of extending workers' compensation

coverage to part-time household employees while at the same time minimizing the impact of the extension of compensation coverage on homeowners. In my opinion the majority decision has done serious damage to that balance. Their rejection of subdivision (c)(2), and utilization of subdivision (c)(4), requires that average weekly earnings be computed at hourly rates which may be far in excess of the hourly rate paid by the homeowner for part-time domestic assistance. This is a greater risk for the carrier and risks are paid by premium dollars borne by the homeowner. I do not believe the Legislature intended the result brought about through the majority opinion.

The petition of respondents Murphy and Allstate Insurance Company for review by the Supreme Court was denied March 2, 1988.