175 Cal.App.3d 212 (1985)
220 Cal. Rptr. 561
MICHAEL T. LUJAN, Petitioner,
v.
WORKERS' COMPENSATION APPEALS BOARD, VANIER GRAPHICS CORPORATION et al., Respondents.
Docket No. B013851.
Court of Appeals of California, Second District, Division Four.
December 3, 1985.
*213 COUNSEL
Weinstein, Shelley & Proctor and Joel A. Davis for Petitioner.
Manchester, Weling & Leland, Leland & Lanigar, Stafford R. Leland, Richard W. Younkin, William B. Donohoe, Alvin R. Barrett and Charles E. Finster for Respondents.
OPINION
WOODS, P.J.
Michael T. Lujan (applicant) seeks review of the decision after reconsideration by respondent Workers' Compensation Appeals Board (Board) modifying the findings of the workers' compensation judge (WCJ) by reducing the rate for temporary disability indemnity. As we shall explain, the Board's decision must be annulled.
*214 Applicant, a warehouseman, sustained industrial orthopedic injuries in June, October and November 1980, resulting in intermittent periods of temporary disability.
The parties agreed as to most issues, and submitted the issue of temporary disability indemnity on a handwritten offer of proof setting forth that applicant's earnings of $9,711.24 in the year preceding the June 18, 1980, industrial injury were sufficient for a temporary disability (TD) rate of $142.96 a week; his earnings of $5.85 an hour for a 40-hour week from June 18, 1980 to July 1981 were sufficient for a TD rate of $156 a week; his earnings of $7.50 an hour for a 40-hour week from July 1981 to June 1982 were sufficient for a TD rate of $175 a week; his weekly earnings of $300 from June 1982 to January 1983 would produce TD of $196 a week; and his earnings thereafter until January 1, 1984, were sufficient to produce a TD rate of $200 a week. The computed estimates of TD indemnity are based on applicant's claim, in the offer of proof, that his "post injury earnings should be considered per Thrifty Drug Stores v. WCAB (1979) 95 Cal. App.3d 937."
Applying the rule in Thrifty Drug Stores, Inc. v. Workers' Comp. Appeals Bd. (1979) 95 Cal. App.3d 937 [157 Cal. Rptr. 459], that post-injury salary increases might justify TD indemnity under subdivision (d), rather than subdivision (a) of the 1980 version of Labor Code section 4453, the WCJ found that applicant's earnings were sufficient to produce TD indemnity of $142.96 a week prior to June 18, 1980; $156 a week thereafter until July 1981; $175 a week to January 1, 1982; $196 a week thereafter to January 1983; and $200 a week thereafter to January 1984.[1]
The Board, in a two-to-one decision, granted reconsideration and concluded that the WCJ erred in utilizing actual post-injury earnings in computing the TD rate. Instead, the Board majority applied subdivision (a), rather than subdivision (d), of the 1980 provisions of section 4453, thus computing a TD rate on earnings at the time of injury, resulting in a lower *215 rate than found by the WCJ. The Board majority concluded that the facts herein were distinguishable from the facts in Thrifty Drug Stores, Inc. v. Workers' Comp. Appeals Bd., supra, 95 Cal. App.3d 937, where evidence of a collective bargaining agreement providing for specific future wage increases was held to justify TD benefits reflecting anticipated post-injury salary increases so as to compute compensation under subdivision (d), rather than subdivision (a), of section 4453.
The dissenting member of the Board panel concluded that the Thrifty case rule was applicable here, thus justifying the WCJ's consideration of applicant's post-injury earnings in computing the TD rate under subdivision (d).
(1) In the Thrifty case, supra, 95 Cal. App.3d 937, applicant, a full-time retail clerk, sustained industrial injury on March 22, 1971. She was subject to a collective bargaining agreement which provided for wage increases in July 1971 and July 1972. The WCJ considered the potential increased earnings in computing the TD rate under sections 4453 and 4653, in effect utilizing subdivision (d), rather than (a), of section 4453. The Board affirmed this basis of computation.
In Thrifty, the court affirmed the Board and WCJ, rejecting the employer's contention that the TD rate should have been computed under subdivision (a), rather than (d). The court first noted (supra, 95 Cal. App.3d at pp. 940-941) that the Supreme Court in Goytia v. Workmen's Comp. App. Bd. (1970) 1 Cal.3d 889 [83 Cal. Rptr. 591, 464 P.2d 47] "held that `earning capacity' could be reflected in post, as well as preinjury earnings," and that "`[e]arning capacity is not locked into a straitjacket of the actual earnings of the worker at the date of the injury; ... the term envisages a dynamic, not a static, test and cannot be compressed into earnings at a given moment of time.'"
Although the applicant in Goytia was a seasonal worker, the court in Thrifty addressed the questions (95 Cal. App.3d at p. 941) whether (1) there can be circumstances in which actual earnings of a full-time employee at the time of injury do not fairly reflect and reasonably represent earning capacity, and (2) if so, raises not actually received but which would have been received, but for the injury, could be considered in determining earning capacity. The court noted (p. 942) that both Herlick (1 Herlick, Cal. Workers' Compensation Law Handbook (2d ed. 1978) § 5.13) and Larson (2 Larson, Workmen's Compensation Law (1976) §§ 57.20-57.53 [presently 2 Larson, The Law of Workers' Compensation (1983) § 57.20 et seq.]) advanced the view that post-injury wage increases can be considered in computing the compensation rate. The court also noted (p. 943) that post-injury earning potential was utilized in applying subdivision (d) of section 4453 in Pascoe v. Workmen's Comp. Appeals Bd. (1975) 46 Cal. App.3d 146 [120 Cal. Rptr. 199].
*216 The Thrifty court concluded that although in the ordinary and usual case of the permanent and full-time employee the statutory objective is well served by the standard formula of subdivision (a) in determining earning capacity, there is "no logical or legal basis for penalizing full-time permanent employees by `locking them into' subdivision (a) and uniformly denying them the benefits of the more flexible test of subdivision (d)." (95 Cal. App.3d at p. 944.) Consequently, it was held that "where, as here, there is specific demonstrable evidence that the injured employee, would, but for the injury, have received increased earnings, the fixed formula of subdivision (a) cannot be reasonably and fairly applied, and that in such circumstances average earnings can be computed on the basis of earning capacity under section 4453, subdivision (d)." (Ibid.; accord, Toccalino v. Workers' Comp. Appeals Bd. (1982) 128 Cal. App.3d 543, 560 [180 Cal. Rptr. 427].)
The court is charged with determining the average weekly earning capacity of an employee at the time of injury. The capacity to earn at the time of injury can clearly include a post-injury period when necessary to the fair determination of that capacity. In the instant case, applicant presented specific demonstrable evidence of earning capacity justifying computation of the TD rate under subdivision (d), as the WCJ and dissenting Board member correctly concluded. The Board majority erred in reversing the WCJ and mechanically applying subdivision (a) to applicant's actual earnings as of the date of his injury, despite his proof of increased earning capacity, as reflected by his post-injury earnings. (Goytia v. Workmen's Comp. App. Bd., supra, 1 Cal.3d 889; Thrifty Drug Stores, Inc. v. Workers' Comp. Appeals Bd., supra, 95 Cal. App.3d 937; Pascoe v. Workmen's Comp. Appeals Bd., supra, 46 Cal. App.3d 146.)
In addition to their error in holding the Thrifty case rule inapposite herein, the Board majority's decision is inconsistent with the decision in Toccalino v. Workers' Comp. Appeals Bd., supra, 128 Cal. App.3d 543.
(2) It is fundamental to workers' compensation law that interpretation and application of Labor Code provisions are to be construed liberally in favor of conferring benefits on the injured employee. (§ 3202; LeBoeuf v. Workers' Comp. Appeals Bd. (1983) 34 Cal.3d 234, 241 [193 Cal. Rptr. 547, 666 P.2d 989]; Maher v. Workers' Comp. Appeals Bd. (1983) 33 Cal.3d 729, 733 [190 Cal. Rptr. 904, 661 P.2d 1058]; Webb v. Workers' Comp. Appeals Bd. (1980) 28 Cal.3d 621, 626 [170 Cal. Rptr. 32, 620 P.2d 618]; Moyer v. Workmen's Comp. Appeals Bd. (1973) 10 Cal.3d 222, 233 [110 Cal. Rptr. 144, 514 P.2d 1224]; Industrial Indemnity Co. v. Workers' Comp. Appeals Bd. (1985) 165 Cal. App.3d 633, 638 [211 Cal. Rptr. 683].) This rule of liberal construction is binding on the Board and this court. (Lamb v. Workmen's Comp. Appeals Bd. (1974) 11 Cal.3d 274, 280 [113 Cal. Rptr. 162, 520 P.2d 978]; Garza v. Workmen's Comp. App. Bd. (1970) *217 3 Cal.3d 312, 317 [90 Cal. Rptr. 355, 475 P.2d 451].)[2] The application of Thrifty to the facts before us is consistent with this principle.
(3) On review, the Board asserts for the first time that the handwritten offer of proof fails to comply with technical rules of admissibility of evidence, such as claimed irrelevancies, conclusions, ambiguities, failure to state specific evidentiary facts, and failure to record the offer of proof in the minutes of hearing. The Board cites authority for the proposition that where an offer of proof includes admissible and inadmissible evidence, it has discretion to reject the entire offer. (Hutton v. Brookside Hospital (1963) 213 Cal. App.2d 350, 357 [28 Cal. Rptr. 774].)
Quite apart from the legislative mandate that the WCJ and Board are not bound by the common law or statutory rules of evidence and procedure and that no decision shall be invalidated because of use as proof of any evidence not admissible under such rules (§§ 5708, 5709; see Bland v. Workmen's Comp. App. Bd. (1970) 3 Cal.3d 324, 330 [90 Cal. Rptr. 431, 475 P.2d 663]), the parties here submitted the issue of TD indemnity on the offer of proof without procedural or evidentiary objection. Neither the WCJ nor the Board attempted to exercise its discretion to reject the offer of proof in whole or in part. In fact, both the WCJ and Board decided the issue on the merits of the offer of proof. In the circumstances, the Board cannot now justify its decision by resort to technical objections to the offer of proof.
The April 4, 1985, decision of respondent Workers' Compensation Appeals Board after reconsideration is annulled, and the matter is remanded for further proceedings consistent with the views expressed herein.
McClosky, J., and Arguelles, J., concurred.
The petitions of respondents Workers' Compensation Appeals Board and Industrial Indemnity Company for review by the Supreme Court were denied February 27, 1986.
NOTES
[1] In 1980, the TD rate was determined under then Labor Code sections 4453 and 4653. Since 1974, section 4653 has provided as follows: "If the injury causes temporary total disability, the disability payment is two-thirds of the average weekly earnings during the period of such disability, consideration being given to the ability of the injured employee to compete in an open labor market." (Stats. 1973, ch. 1023, § 4, p. 2029, operative April 1, 1974.)

In 1980, section 4453 provided: "... (a) Where the employment is for 30 or more hours a week and for five or more working days a week, the average weekly earnings shall be 100 percent of the number of working days a week times the daily earnings at the time of the injury. [¶].... [¶] (d) Where the employment is for less than 30 hours per week, or where for any reason the foregoing methods of arriving at the average weekly earnings cannot reasonably and fairly be applied, the average weekly earnings shall be taken at 100 percent of the sum which reasonably represents the average weekly earning capacity of the injured employee at the time of his injury, due consideration being given to his actual earnings from all sources and employments." (Stats. 1980, ch. 1042, § 1, p. 3328.)
All further section references herein are to the Labor Code unless otherwise indicated.
[2] The Board's reliance on Van Voorhis v. Workmen's Comp. Appeals Bd. (1974) 37 Cal. App.3d 81 [112 Cal. Rptr. 208], is misplaced. There the court merely concluded that the average weekly earnings at the time of injury could reasonably and fairly be applied to an applicant who was seeking permanent disability under section 5412 relating to occupational diseases.