[No. D027542. Fourth Dist., Div. One. Dec. 11, 1997.]

GROSSMONT HOSPITAL, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and MAY R.
KYLLONEN, Respondents.

COUNSEL

Mullen, Plummer, Badger & Bush and John W. Mullen for Petitioner.

Rose, Klein & Marias and Dennis D. Welch for Respondents.

OPINION

HALLER, J.—In this opinion we address whether a wage increase that occurs after an injury can be considered in calculating temporary total disability benefits due. *Thrifty Drug Stores, Inc.* v. *Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 937 [157 Cal.Rptr. 459] (*Thrifty Drug*) holds that upon a proper showing such increases can be considered. The question presented here is whether subdivision (d), added to Labor Code[1] section 4453 in 1989, mandates a different result for workers sustaining injury on or after January 1, 1990. We conclude wage increases that were scheduled or reasonably anticipated at the time of injury and that would occur during the anticipated duration of the disability may be considered in determining the injured worker's "earning capacity" and ultimately the benefits due. However, where the subsequent change in wages is not scheduled or reasonably anticipated at the time of injury or where it would not occur during the anticipated duration of the disability, it may not be considered.

---

[1] All statutory references are to the Labor Code unless otherwise specified.

## BACKGROUND

On April 16, 1995, respondent May R. Kyllonen (Kyllonen), a full-time employee for petitioner Grossmont Hospital (Grossmont), sustained an admitted injury in the course of her employment. Five months later, while on temporary total disability status, Kyllonen received a regularly scheduled wage increase. Grossmont refused to increase benefits.

Kyllonen filed an application for adjudication of claim with the Workers' Compensation Appeals Board (the Board). The workers' compensation judge concluded Kyllonen was entitled to an increase in her temporary disability rate. The Board denied reconsideration.

Grossmont petitioned for review. We issued a writ of review and the parties waived oral argument.

## DISCUSSION

Grossmont contends that section 4453, subdivision (d) has replaced the *"Thrifty Drug* rule" and that under subdivision (d), wages on the date of injury control indemnity benefit calculations for all injuries sustained on or after January 1, 1990. Kyllonen on the other hand contends *Thrifty Drug* remains good law and that if "earning capacity" changes subsequent to a worker's injury, the worker should be entitled to a subsequent increase or decrease in benefits as appropriate. As discussed below, we reject both parties' positions.

*Statutory Development*

Eighty-six years ago California first provided for workers' compensation disability benefits. (Stats. 1911, ch. 399, p. 796 et seq. [Roseberry Act].) Disability benefits were based on "average weekly earnings" calculated using either the employee's actual earnings or earnings of employees in the same class. (Stats. 1911, ch. 399, §§ 8(2)(a), 9(1)(a), (b), pp. 798, 800.) Where those two methods could not "reasonably and fairly" be applied, a third method was used which reasonably represented the worker's "average earning capacity" at the time of injury. (Stats. 1911, ch. 399, § 9(1)(c), p. 800.)

In 1917, the Legislature enacted the "Workmen's Compensation, Insurance and Safety Act." It provided temporary total disability benefits, again

based on "average weekly earnings," which were calculated under one of four methods. (Stats. 1917, ch. 586, §§ 9(b)2(1), 12(a), pp. 836-837, 842-843.) The first three methods were based on the actual earnings of the employee or those of employees in the same class. (Stats. 1917, ch. 586, § 12(a)(1)-(3), p. 843.) The fourth method applied, inter alia, where the other methods could not "reasonably and fairly be applied" with average weekly earnings being based on a sum that "reasonably represent[s] the average weekly earning capacity" of the injured employee at the time of injury with due consideration to the worker's actual earnings. (Stats. 1917, ch. 586, § 12(a)(4), p. 843.)

In 1937, the Legislature enacted a Labor Code consolidating and revising the law relating to labor and employment relations. (Stats. 1937, ch. 90, p. 185 et seq.) Section 4653 provided disability payment for temporary total disability was 65 percent of the "average weekly earnings." (Stats. 1937, ch. 90, § 4653, p. 282.) Four methods of computing average weekly earnings were provided, with the first three based on actual earnings. The first applied to full-time workers, the second to workers working for two or more employers and the third to workers with irregular compensation rates or those paid by the week, month, or other period. (Stats. 1937, ch. 90, § 4453(a), (b), (c), p. 279.) The fourth, applied where employment was less than 30 hours per week or "where for any reason" the other methods could not "reasonably and fairly be applied." (Stats. 1937, ch. 90, § 4453(d), p. 279.) Average weekly earnings under the fourth method were defined as a specified percent of the sum that reasonably represented the "average weekly earning capacity" of the injured employee at the time of injury with due consideration given to actual earnings. (*Ibid.*)

Since the 1937 codification, the Legislature has repeatedly amended the statutes to change specified compensation limits. However, except for organizational or stylistic changes and a change in the percent of actual earnings or earning capacity used in computations, the Legislature has made no change in the four methods of computing average weekly earnings.[2]

While leaving the methods of calculating the average weekly earnings essentially unchanged, the Legislature enacted the "Workers' Compensation

---

[2](Stats. 1939, ch. 308, § 2, p. 1581; Stats. 1947, ch. 1033, § 3, pp. 2304-2305; Stats. 1951, ch. 606, § 3, pp. 1766-1767; Stats. 1955, ch. 956, § 2, pp. 1851-1852; Stats. 1957, ch. 1996, § 3, pp. 3551-3552; Stats. 1959, ch. 1189, § 2, pp. 3276-3277; Stats. 1961, ch. 1621, § 2, pp. 3515-3516; Stats. 1969, First Ex. Sess. 1968, ch. 4, § 4, pp. 31-32; Stats. 1971, ch. 1330, § 1, pp. 2632-2633; Stats. 1971, ch. 1750, § 1, pp. 3774-3775; Stats. 1973, ch. 1023, § 2, pp. 2028-2029 [increased to 100 percent of actual earnings or earning capacity]; Stats. 1974, ch. 226, § 1, pp. 424-425; Stats. 1975, ch. 1263, § 11, pp. 3316-3317; Stats. 1976, ch. 1017, § 3, pp. 4594-4595; Stats. 1977, ch. 17, § 26, pp. 33-34; Stats. 1977, ch. 1018, § 1, p. 3054; Stats. 1980, ch. 1042, § 1, pp. 3328-3329; Stats. 1982, ch. 922, § 7, pp. 3367-3368; Stats. 1989, ch.

Reform Act of 1989" (the Act), which substantially changed the workers' compensation system in numerous respects, including increasing the limits for temporary and permanent disability benefits for injuries sustained on or after January 1, 1990. (Stats. 1989, ch. 892, § 29, pp. 3012-3013 [§ 4453, subd. (a)(3), (4)].)[3] As part of the Act the Legislature also enacted subdivision (d) of section 4453. (Stats. 1989, ch. 892, § 29, pp. 3013-3014.)[4]

Under the current statutory scheme, the disability payment for temporary total disability is two-thirds of the "average weekly earnings" during the disability period. (§ 4653.) Calculation of "average weekly earnings" for temporary disability as well as permanent total disability is subject to the maximum and minimum limits set forth in section 4453, subdivision (a). Within those limits, "average weekly earnings" are calculated as provided in section 4453, subdivision (c).[5] Subdivision (c)(1)-(3) methods of calculation are based on the actual earnings of the employee and subdivision (c)(4) on earning capacity. Subdivision (d), in a manner to be addressed in this opinion, addresses computation of benefits.

---

892, § 29, pp. 3012-3013; Stats. 1989, ch. 893, § 3, pp. 3042-3043; Stats. 1990, ch. 1550, § 29, pp. 7274-7275; Stats. 1993, ch. 121, § 37.)

[3]Section 4453 was subsequently amended in 1989 but this amendment did not alter the language of subdivision (a), (c) or (d) at issue here. (Stats. 1989, ch. 893, § 3, pp. 3042-3043.)

[4]There have been two amendments to section 4453 since 1989. One corrected a typographical error and one added limits to be used in computing disability indemnity. (Stats. 1990, ch. 1550, § 29, p. 7275 [§ 4453, subd. (c)]; Stats. 1993, ch. 121, § 37 [§ 4453, subds. (a)(5)-(7), (b)(3)-(6)].)

[5]Section 4453, subdivision (c) provides:

"Between the limits specified in subdivisions (a) and (b), the average weekly earnings, except as provided in Sections 4456 to 4459, shall be arrived at as follows:

"(1) Where the employment is for 30 or more hours a week and for five or more working days a week, the average weekly earnings shall be the number of working days a week times the daily earnings at the time of the injury.

"(2) Where the employee is working for two or more employers at or about the time of the injury, the average weekly earnings shall be taken as the aggregate of these earnings from all employments computed in terms of one week; but the earnings from employments other than the employment in which the injury occurred shall not be taken at a higher rate than the hourly rate paid at the time of the injury.

"(3) If the earnings are at an irregular rate, such as piecework, or on a commission basis, or are specified to be by week, month, or other period, then the average weekly earnings mentioned in subdivision (a) shall be taken as the actual weekly earnings averaged for this period of time, not exceeding one year, as may conveniently be taken to determine an average weekly rate of pay.

"(4) Where the employment is for less than 30 hours per week, or where for any reason the foregoing methods of arriving at the average weekly earnings cannot reasonably and fairly be applied, the average weekly earnings shall be taken at 100 percent of the sum which reasonably represents the average weekly earning capacity of the injured employee at the time of his or her injury, due consideration being given to his or her actual earnings from all sources and employments."

*Case Law Interpreting Section 4453, Subdivision (c)(4)*

For the past 80 years, section 4453, subdivision (c)(4) or its predecessors have provided that where for "any reason" methods for calculating average weekly earnings based on actual earnings cannot "reasonably and fairly" be applied, average weekly earnings will be based on the "average weekly earning capacity" of the employee at the time of injury with due consideration given to the worker's actual earnings. Extensive case law has developed as to the preeminence of "earning capacity" and what factors may be considered in its determination.

*West* v. *Industrial Acc. Com.* (1947) 79 Cal.App.2d 711 [180 P.2d 972] involved total temporary disability benefits for an injured homecare practical nurse who had a history of intermittent employment. Based on the element of discontinuity in employment, the court concluded it was not reasonable or fair to apply the statutory formulas for average earnings but that "earning capacity" must be determined under the predecessor to section 4453, subdivision (c)(4). (79 Cal.App.2d at pp. 724-725.) The court explained that disability payments represented a specified portion of the employee's loss in earning capacity as it existed at the time of the injury and that "average earnings" was a statutory term for the basis upon which actual earnings were computed to arrive at a worker's earning capacity. (*Id.* at p. 721.) Specific formulas were provided to take care of the "ordinary run of cases in a speedy and uniform fashion." (*Ibid.*) However, earning capacity at the time of injury, composed of the ability, willingness and opportunity to work, is the "base" or "touchstone" of average earnings. (*Id.* at p. 722.)

Where the injured worker is employed on an intermittent basis, courts have often used reasoning similar to that found in *West* v. *Industrial Acc. Com.*, *supra*, 79 Cal.App.2d 711 to justify benefit payments less than that which would be due applying actual earnings at the time of injury. (See, e.g., *Westside Produce Co.* v. *Workers' Comp. Appeals Bd.* (1978) 81 Cal.App.3d 546, 552 [146 Cal.Rptr. 498] [temporary disability benefits for seasonal worker based on earnings at time of injury awarded only for period employment would have continued with further payments based on past earning history and anticipated future earnings]; *Neahr* v. *Industrial Acc. Com.* (1936) 13 Cal.App.2d 146, 148 [56 P.2d 568] [benefits for worker currently employed as a riveter but with intermittent work history at other jobs properly based on surrounding circumstances affecting his earning ability and not upon his current rate of pay].) At least one court has used earning history to increase benefits over that which would have been due based on actual earnings at the time of injury. (*Elliot* v. *Workers' Comp. Appeals Board* (1987) 196 Cal.App.3d 1497 [242 Cal.Rptr. 601] [temporary disability benefits based on earning capacity where worker injured while employed

as part-time domestic had been employed as an emergency medical technician].)

The California Supreme Court considered the application of a predecessor statute to section 4453, subdivision (c)(4) as to both temporary and permanent disability in *Argonaut Ins. Co. v. Industrial Acc. Com.* (1962) 57 Cal.2d 589 [21 Cal.Rptr. 545, 371 P.2d 281]. Montana was a construction worker with a high rate of pay but an intermittent work pattern. In discussing the provision the court stated "[a]n estimate of earning capacity is a prediction of what an employee's earnings would have been had he not been injured." (*Id.* at p. 594.) The purpose of the provision was to equalize the position of the full-time, regularly employed worker and that of the worker whose wage may be a distorted basis for estimating true earning power. (*Ibid.*)

The court further explained that in making an award for temporary disability, the question is whether an applicant would have continued working at a given wage for the duration of the disability. All facts relevant and helpful to making an estimate of earning capacity must be considered. "The applicant's ability to work, his age and health, his willingness and opportunities to work, his skill and education, the general condition of the labor market, and employment opportunities for persons similarly situated are all relevant." (*Montana, supra,* 57 Cal.2d at p. 595.)

In *Goytia v. Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 889 [83 Cal.Rptr. 591, 464 P.2d 47] (*Goytia*), a case involving permanent disability benefits, a seasonal worker was injured while employed by a packing house. She had been so employed for several years but after her injury obtained full-time employment as a cashier. The Supreme Court concluded evidence of subsequent earnings should be given consideration in determining "earning capacity" under a predecessor statute to section 4453, subdivision (c)(4). (*Goytia, supra,* 1 Cal.3d at pp. 891, 898.) The court explained that prior earnings, while important, are not the sole basis to determine earning capacity. They constitute only one factor to be considered. The subdivision necessarily refers to earning potential which may be reflected in postinjury earnings. (*Id.* at pp. 894-898.)

Courts have taken an injured worker's employment potential into consideration in awarding benefits under predecessor statutes to section 4453, subdivision (c)(4). In *Jeffares v. Workmen's Comp. App. Bd.* (1970) 6 Cal.App.3d 548 [86 Cal.Rptr. 288], a full-time student was working part time as a park recreation instructor when injured. The worker testified that before her injury she had expected to obtain her teaching credentials and commence teaching within a matter of months but that due to her injuries she

was unable to do so. The court concluded the worker's career plans demonstrated her willingness and ability to work at a full-time teaching job and that the calculation of her temporary disability benefits should have taken the future employment as a teacher into consideration. (*Id.* at pp. 552-553; see also *Pascoe* v. *Workmen's Comp. Appeals Bd.* (1975) 46 Cal.App.3d 146 [120 Cal.Rptr. 199] [temporary disability benefits of a worker injured when working as a nurse's aid must be increased upon her becoming a registered nurse].)

In *Thrifty Drug, supra,* 95 Cal.App.3d 937, the injured worker was entitled to salary increases post-injury pursuant to an existing union contract. The court concluded that where there was "specific demonstrable evidence" the injured worker, barring injury, would have received increased wages, a fixed formula based on actual wages at the time of injury cannot be reasonably and fairly applied. (*Id.* at p. 944.) Average earnings should be computed on the basis of the "earning capacity" method entitling the worker to increased benefits for those periods of temporary disability following the pay raises. (*Ibid.*) (Cf. *Toccalino* v. *Workers' Comp. Appeals Bd.* (1982) 128 Cal.App.3d 543, 559-560 [180 Cal.Rptr. 427] [temporary disability benefits calculated on earnings at time of termination of employment rather than time of injury where worker continued to work after injury and received pay increase]; *Lujan* v. *Workers' Comp. Appeals Bd.* (1985) 175 Cal.App.3d 212, 215-216 [220 Cal.Rptr. 561] [temporary disability benefits calculated at increased rates where injury resulted in intermittent periods of disability during which worker received pay raises].)[6]

---

[6]The parties have not cited nor have we located any published Supreme Court or Court of Appeal cases addressing application of section 4453, subdivision (c)(4) or section 4453, subdivision (d) to injuries occurring on or after January 1, 1990. Nor have we located any Board decisions interpreting subdivision (d). The Board, however, has issued several decisions applying subdivision (c)(4) to injuries occurring on or after January 1, 1990. In *Fairmont Insurance Company* v. *Workers' Compensation Appeals Board (Athanasopoulos)* (1993) 58 Cal.Comp.Cases 88, the worker was injured while employed as a waitress. She had been hired with the understanding she would replace the departing restaurant manager. The Board concluded temporary and permanent disability benefits should be calculated based on her earning capacity as a manager and not as a waitress. For seasonal employees, the Board has continued to award benefits for temporary disability based on their earning capacity but has paid the benefits both with consistent payments throughout the term of the disability (see *City of Eureka* v. *Workers' Compensation Appeals Board (Dake)* (1995) 60 Cal.Comp.Cases 1019) and with changing payment rates depending upon anticipated wages for a particular period (see *Carrizales* v. *Berryessa Unified Sch. Dist.* (1995) SJ 172396, 24 Cal. Workers' Comp. Rptr. 140). The Board also awarded temporary disability benefits at two different rates where the injured worker would have received a salary increase during the term of her disability. (*Herman* v. *Workers' Compensation Appeals Board (Dean's Photo Service)* (1996) 61 Cal.Comp.Cases 396.)

*Enactment of Section 4453, Subdivision (d)*

■ The primary goal of statutory construction is to determine the intent of the Legislature to effectuate the purpose of the law. (*DuBois* v. *Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387 [20 Cal.Rptr.2d 523, 853 P.2d 978].) To do so, the court should first look to the words of the statute. (*Ibid.*) If the words are clear, we enforce the statute according to its terms. (*Id.* at pp. 387-388.) We must however consider the provision in the context of the entire statute and the purpose of the statutory scheme of which it is part. (*Id.* at p. 388.) Where possible, significance should be given to every word, sentence or part of the provision and the parts harmonized, considering the provision in the context of the whole statutory framework. (*Ibid.*) To determine what the Legislature intended when it enacted section 4453, subdivision (d), we review not only the language of the provision but its relationship to the total legislative enactment, and where the meaning of the statute is uncertain, we consider legislative history including legislative committee reports made during the legislative process. (*DuBois* v. *Workers' Comp. Appeals Bd.*, *supra*, 5 Cal.4th at pp. 388, 393.)

Section 4453, subdivision (d) provides: "Every computation made pursuant to this section beginning January 1, 1990, shall be made only with reference to temporary disability or the permanent disability resulting from an original injury sustained after January 1, 1990. However, all rights existing under this section on January 1, 1990, shall be continued in force. Except as provided in Section 4661.5, disability indemnity benefits shall be calculated according to the limits in this section in effect on the date of injury and shall remain in effect for the duration of any disability resulting from the injury." The subdivision as a whole, as well as its individual parts, is far from a model of clarity.

Subdivision (d) was added to section 4453 as part of the Act which made numerous changes in the workers' compensation benefit structure, benefit delivery, and benefit financing. (Sen. Rules Com., Office of Sen. Floor Analyses, Analysis of Assem. Bill No. 276 (1989-1990 Reg. Sess.) as amended Sept. 15, 1989, pp. 1-2.) The changes were designed to increase benefits particularly during periods of temporary disability. (Sen. Rules Com., Office of Sen. Floor Analyses, Analysis of Assem. Bill No. 276 (1989-1990 Reg. Sess.) as amended Sept. 15, 1989, p. 1.) Supporters of the bill characterized the existing compensation system as a "national embarrassment," being one of the most expensive systems in the country for employers while providing some of the lowest weekly disability benefits for injured workers. (Conf. Com., Conf. Rep. No. 1, Analysis of Assem. Bill No. 276 (1989-1990 Reg. Sess.) p. 7.); Assem. Com. on Finance and Ins., Subcom. on Health and Workers' Ins., Analysis of Assem. Bill No. 2032

(1989-1990 Reg. Sess.) as amended June 30, 1989, pp. 10-11.) The bill was an outgrowth of a proposal by representatives of organized labor, management and the insurance industry intended to streamline and improve the benefit delivery system, increase benefit levels for injured workers and reduce costs to employers.[7] (Cal. Dept. of Industrial Relations, Enrolled Bill Rep. for Assem. Bill No. 276 (1989-1990 Reg. Sess.) prepared for Gov. Deukmejian (Sept. 19, 1989) pp. 1, 4.) With respect to temporary and permanent total disability benefits, the Act, in addition to adding subdivision (d) to section 4453, increased maximum benefit levels for injuries sustained on or after January 1, 1990, and again for those sustained on or after January 1, 1991. (Stats. 1989, ch. 892, § 29, pp. 3012-3013 [§ 4453, subd. (a)(3), (4)].) We have not located, nor have the parties cited, any specific statement by the Legislature as to the purpose for enacting subdivision (d).

The first sentence of section 4453, subdivision (d) provides that every computation pursuant to the section beginning January 1, 1990, shall be made only with reference to temporary or permanent disability resulting from injuries sustained after January 1, 1990.[8] However, computations for average weekly earnings are subject to the limits set forth in subdivision (a) for temporary and permanent total disability and subdivision (b) for permanent partial disability. (§ 4453, subd. (c).) Subdivisions (a) and (b) include computation formulas for injuries occurring on or after January 1, 1983, and on or after January 1, 1984. (§ 4453, subds. (a)(1), (2), (b)(1), (2).) These limits specifically apply to injuries sustained before January 1, 1990, and the first sentence of subdivision (d) cannot mean that those limits do not apply to such cases. The first sentence of subdivision (d) merely reiterates that those provisions providing benefits for injuries occurring on or after January 1, 1990, do not apply to injuries occurring before that date.

The second sentence of section 4453, subdivision (d) states that rights existing on January 1, 1990, shall continue in force. The right to workers' compensation benefits is not derived from the common law but is wholly based upon the California Constitution and California statutes. (Cal. Const., art. XIV, § 4; § 3200 et seq.; *DuBois* v. *Workers' Comp. Appeals Bd., supra,*

---

[7]We reject Grossmont's argument that the "express intent of the Legislature in enacting all of the 1989 amendments" was to reduce litigation, including increased litigation spawned by *Thrifty Drug.* First, the section relied upon by Grossmont is taken out of context. Rather than being a general statement of legislative intent as to all provisions of the Act, the section is a statement of intent "to reduce the backlog in worker's compensation courts" by increasing staffing and funding for workers' compensation courts. (Stats. 1989, ch. 893, § 7, pp. 3045-3046.) Moreover, if an overall purpose of the legislation was to reduce litigation, Grossmont provides no support for its contention *Thrifty Drug* led to increased litigation.

[8]The wording of the sentence may create confusion whether it includes injuries occurring on January 1, 1990. Reference to other subdivisions of section 4453, however, make it clear that such injuries are included. (See § 4453, subds. (a), (b).)

5 Cal.4th at p. 388.) Moreover, the law in effect at the time of the injury measures the injured person's right of recovery. (§ 4453.5; *State of California* v. *Ind. Acc. Com.* (1957) 48 Cal.2d 355, 361 [310 P.2d 1].) Cases do not create rights but rather interpret those created by statute and the Constitution. We are therefore presented with the question, "Is the *Thrifty Drug* interpretation of section 4453 still valid in light of the 1989 changes to the statutes?"

The 1989 statutory changes did not alter the law as to pre-1990 injuries and cases interpreting that law remain valid for those injuries. As to injuries sustained on or after January 1, 1990, however, the Act changed section 4453. To conclude the second sentence of subdivision (d) requires interpretation of preexisting case law to remain unchanged in the face of legislative change is nonsensical, i.e., case law interpreting a former version of the statute would control over the language of the current version. The second sentence of subdivision (d) is therefore a statement of the continued validity of preexisting case law for workers sustaining injuries before January 1, 1990. To determine whether *Thrifty Drug*'s interpretation remains valid for injuries sustained on or after January 1, 1990, we must examine the third sentence of section 4453, subdivision (d).

The third sentence contains two provisions. The first states that except as provided in section 4661.5,[9] disability benefits shall be calculated in accordance with the limits in effect on the date of injury. Based on this provision, Grossmont argues that for injuries occurring on or after January 1, 1990, "the date of injury" must be used "exclusively in calculating the rate of temporary disability benefits" and that calculations must be based "solely on the worker's earnings at the date of injury." If Grossmont means that average weekly earnings for injuries sustained on or after January 1, 1990, must be calculated on the basis of an injured worker's earnings at the time of injury under section 4453, subdivision (c)(1)-(3), it is in error.

The first provision of the third sentence requires only that disability benefits be calculated according to the "limits" in effect on the date of the injury. Section 4453, subdivisions (a) and (b) contain those limits. Within those limits, however, it is subdivision (c) that controls the method under which average weekly earnings are calculated and ultimately what benefits

---

[9]Section 4661.5 provides: "Notwithstanding any other provision of this division, when any temporary total disability indemnity payment is made two years or more from the date of injury, the amount of this payment shall be computed in accordance with the temporary disability indemnity average weekly earnings amount specified in Section 4453 in effect on the date each temporary total disability payment is made unless computing the payment on this basis produces a lower payment because of a reduction in the minimum average weekly earnings applicable under Section 4453."

will be paid under section 4653 for temporary disability and section 4658 for permanent disability. Section 4453, subdivision (d) does not limit subdivision (c) methods of calculation for injuries sustained on or after January 1, 1990.

Moreover, section 4453, subdivision (c) methods for calculating average weekly earnings have remained substantially unchanged for 60 years. The Act made only nonsubstantive changes to the subdivision (c)(1)-(3) methods of calculation based on actual earnings at the date of injury, and made no changes to the subdivision (c)(4) method of calculation based on earning capacity. Nor did the Act state it intended to abrogate the extensive body of law interpreting section 4453, subdivision (c)(4) and its predecessors. There is absolutely no basis to conclude the Legislature intended to eliminate the earning capacity method of calculating average weekly earnings, the "touchstone" of such calculation. (*West v. Industrial Acc. Com., supra,* 79 Cal.App.2d at p. 722.)

However, application of the earning capacity method of calculating average weekly earnings has not been unaffected by the provisions of the Act. The second provision of the third sentence of section 4453, subdivision (d) states that except as provided in section 4661.5, disability indemnity benefits "shall remain in effect for the duration of any disability resulting from the injury." Section 4661.5 applies to temporary total disability indemnity payments that are made two years or more after the date of injury. It requires those payments to be computed in accordance with the average weekly earnings in effect at the time the payment is made unless the calculation would result in a reduction of benefits. Section 4453, subdivision (d) therefore requires that with the section 4661.5 exception, the amount of benefits shall remain unchanged for the duration of the disability.

As to the date used to calculate the consistent benefits, section 4453, subdivision (c)(4) provides that average weekly earnings are 100 percent of the average weekly earning capacity of the worker "at the time of his or her injury." This is consistent with average weekly earnings based on actual earnings being determined at the time of injury (§ 4453, subd. (c)(1) and (2)) and benefits being calculated according to the limits in effect at the date of the injury (§ 4453, subd. (d)). This, coupled with the subdivision (d) requirement that benefits remain in effect for the duration of the disability, leads to the conclusion temporary disability benefits must be calculated with reference to circumstances which are known or could reasonably be anticipated at the time of injury.

A requirement that benefits remain unchanged during the duration of the disability is inconsistent with those pre-1990 cases including *Thrifty Drug*

that increased or decreased benefits throughout the duration of the disability. Moreover, because benefits should be calculated with reference to the date of injury, wage increases or decreases that are not scheduled or reasonably anticipated at the time of the injury should not be used to calculate temporary disability benefits for injuries sustained on or after January 1, 1990. To the extent *Thrifty Drug* holds benefits may be based upon unanticipated increases or decreases or that benefits may be increased and decreased throughout the duration of the disability, it may not be applied to cases involving those injuries. However, insofar as *Thrifty Drug* holds that wage increases or decreases reasonably anticipated at the time of injury may be taken into account to calculate average weekly earnings under the earning capacity method of section 4453, subdivision (c)(4), it remains valid as to all injured workers regardless of the date of their injury.

*Calculation of Total Temporary Disability Benefits for Injuries Occurring on or After January 1, 1990.*

█   In most cases benefits for total temporary disability may be based on actual earnings under section 4453, subdivision (c)(1)-(3). Application of the section 4453, subdivision (c)(4) earning capacity method is appropriate where for any reason the application of the actual earnings methods is not reasonable and fair. Calculation of benefits under subdivision (c)(4) is proper if an employee would not have remained working at a given wage during the duration of the disability. (*Montana, supra*, 57 Cal.2d at p. 595.)

█   In deciding what temporary disability benefits to pay an injured worker, an employer must consider both the anticipated duration of the disability, a function of the nature of the injury and the normal duration of the disability associated with that injury, and any factors which reasonably would affect the worker's earning capacity during the anticipated period of disability. Due consideration should be given to an injured worker's earnings at the time of injury; however, other factors may play a significant role in determining earning capacity. Factors to be considered include the worker's employment history, his or her ability, willingness and opportunity to work, his or her age, health, skill, employment history and education, as well as general labor market conditions. (*Montana, supra*, 57 Cal.2d at p. 595.) Where a wage increase or decrease is scheduled or would be reasonably anticipated during the anticipated duration of the disability, that increase or decrease is a factor that should be taken into account in calculating earning capacity under section 4453, subdivision (c)(4).

The essence of the employer's analysis is to determine whether there are factors that within the anticipated duration of the temporary disability would

increase or decrease the earnings the worker would have received absent the injury. If such factors exist and their impact is significant enough that it is unreasonable or unfair to use actual earnings at the time of injury to calculate temporary disability benefits, earning capacity should be used to calculate benefits. However, if no such factors exist or their impact on earning capacity is de minimis, the employer may use actual earnings in calculating benefits.

This does not mean an employer must speculate or provide for remote possibilities. It is only where there is "specific demonstrable evidence" that increases or decreases would have occurred that an employer need consider them. (*Thrifty Drug, supra,* 95 Cal.App.3d at p. 944.) We recognize there are no bright lines by which an employer may determine earning capacity. The employer's obligation, however, is only to take into consideration factors that may affect earning capacity and to make reasonable determinations based on those factors.

Where a dispute arises between the employer and injured worker, the Board must make a two-level analysis to determine what temporary disability benefits are due. First, it must determine the anticipated duration of the disability based upon the nature of the injury sustained and the normal duration of the disability associated with that injury. Second, the Board must consider whether, barring the injury, anything would have occurred during the anticipated duration of the disability that would have affected the injured worker's earning capacity in a manner that makes it unreasonable or unfair to use actual wages to calculate temporary disability benefits. In doing so, the Board should consider only those factors existing at the time of injury or those that could reasonably be anticipated at that time. Where there is specific demonstrable evidence that such factors exist which would have affected an injured worker's earning capacity other than in a de minimis manner, the Board should consider those factors to calculate one sum that represents a fair and reasonable estimate of average weekly earning capacity for the anticipated duration of the disability. Once the Board makes an award for temporary disability, the third sentence of section 4453, subdivision (d) mandates it remain constant unless changed pursuant to section 4661.5.

Here, the Board applied section 4453, subdivision (c)(4)[10] to increase temporary disability benefits to Kyllonen based on a wage increase occurring during her disability. From the record, we cannot determine whether the wage increase should have been considered in awarding benefits, e.g., it is not apparent whether the wage increase was scheduled or

---

[10]While the Board does not specifically state its determination was based on section 4453, subdivision (c)(4), its reliance on *Thrifty Drug* and Kyllonen's postinjury salary increase to increase benefits mandates such was the case.

reasonably anticipated at the time Kyllonen was injured. Moreover, the Board erred in awarding increased benefits rather than calculating one consistent benefit amount for the term of the disability.

### DISPOSITION

The decision of the Board denying reconsideration is annulled and the matter is remanded to the Board for further proceedings consistent with the views expressed herein.

Huffman, Acting P. J., and McIntyre, J., concurred.